A11A1055. SITTON v. PRINT DIRECTION, INC. et al.

(718 SE2d 532)

MIKELL, Judge.

Larry Sitton was fired from his job after his employer discovered, from e-mails on the computer Sitton used at work, that he was taking part in a competing business on the side. After his discharge, Sitton sued his former employer, Print Direction, Inc. ("PDI"), and

its president and chief executive officer, William S. Stanton, Jr. (collectively "appellees"), for invasion of privacy and for computer theft and trespass in violation of OCGA § 16-9-93.[1] Appellees counterclaimed on several grounds. Following a two-day bench trial, the trial court entered judgment against Sitton and awarded appellees $39,257.71 in damages. Sitton appeals, contending that the trial court erred in rejecting his claims under OCGA § 16-9-93 and for common law invasion of privacy; in the admission of evidence; in finding for appellees on their counterclaim for breach of duty of loyalty; and in the calculation of damages. We affirm the judgment.

"On appeal from the entry of judgment in a bench trial, the evidence must be viewed in the light most favorable to the trial court's findings of fact,"[2] and we apply the following standard of review:

> [F]actual findings made after a bench trial shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. OCGA § 9-11-52 (a). The clearly erroneous test is the same as the any evidence rule. Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them.[3]

Properly viewed, the record reflects that PDI operated a commercial printing business and that Stanton was responsible for PDI's operations. PDI hired Sitton as an exclusive outside salesperson in January 2005 and employed him as an at-will employee until he was discharged in September 2008. As an outside salesperson, Sitton sold PDI's printing services and was required to bill all sales through PDI's accounting department, in order for the commission to be shared between PDI and Sitton.

When he was first hired, Sitton received a copy of PDI's Employee Manual, which provided that "[e]mployees may not take an outside job . . . with a customer or competitor of PDI." Nonetheless, during his employment by PDI, and without informing PDI or Stanton, Sitton brokered more than $150,000 in print jobs through Superior Solutions Associates LLC ("SSA"), a print brokerage

---

[1] This statute is part of the Georgia Computer Systems Protection Act, OCGA § 16-9-90 et seq.

[2] (Citation omitted.) *Realty Lenders v. Levine*, 286 Ga. App. 326-327 (649 SE2d 333) (2007).

[3] (Citations and punctuation omitted.) *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693 (527 SE2d 293) (1999). Accord *Lifestyle Home Rentals v. Rahman*, 290 Ga. App. 585 (660 SE2d 409) (2008).

business which Sitton's wife started in October 2007 and of which Sitton served as manager. Sitton's work for SSA was in competition with PDI and continued through the date of his discharge from PDI. By brokering print jobs through SSA, Sitton was able to keep all the profit on the job rather than share the profit with his employer, PDI.

PDI provided Sitton with a laptop computer for use in connection with his work for PDI. However, Sitton chose to use his own computer, which he brought to his office at PDI, connected to PDI's system network, and used for PDI work. Sitton also used this computer for SSA work. When Stanton "caught wind" that Sitton was competing with PDI, he entered Sitton's office, moved the computer's mouse, clicked on the e-mail listing which appeared on the screen, and printed certain e-mails from Sitton relating to a job for Apex Printing Company. These e-mails, which were on a separate e-mail address from Sitton's PDI-issued e-mail address, confirmed that Sitton was using SSA to compete with PDI. Stanton subsequently terminated Sitton as an employee of PDI.

1. Sitton contends that the trial court erred in determining that Stanton's viewing and printing the incriminating e-mails found on Sitton's personal computer did not constitute computer theft, computer trespass, or computer invasion of privacy under OCGA § 16-9-93. The court found that Stanton's use of Sitton's computer was not "without authority" within the meaning of the statute. We find no error.

The criminal offenses of computer theft, computer trespass, and computer invasion of privacy are set forth in OCGA § 16-9-93, which also provides for civil liability and a civil remedy.[4] Computer theft is committed by one "who uses a computer or computer network with knowledge that such use is without authority and with the intention of" taking, obtaining, or converting property of another.[5] Similarly, a person commits computer trespass when he "uses a computer or computer network with knowledge that such use is without authority and with the intention of" deleting any computer program or data; obstructing or interfering with use of a computer program or data; or altering, damaging, or causing to malfunction a computer, computer network, or computer program.[6] A person commits computer invasion of privacy when he uses a computer or computer network "with the intention of examining any employment, medical, salary, credit, or any other financial or personal data relating to any other person with

---

[4] OCGA § 16-9-93 (g) (1).
[5] OCGA § 16-9-93 (a) (1)-(3).
[6] OCGA § 16-9-93 (b) (1)-(3).

knowledge that such examination is without authority.'"[7]

It can be seen that these three computer offenses include at least the following elements: that the proscribed actions be taken "with knowledge" that the use of the computer or the examination of the other person's data was "without authority" and that the actions be taken with the requisite intent.

We first note that the evidence fails to show that Stanton's use of Sitton's computer was "with the intention of" performing any of the acts forbidden by the statute. Stanton did not, nor did he intend to: take, obtain, or convert Sitton's property (computer theft); delete any computer program or data, obstruct or interfere with a computer program or data, or alter or damage a computer, computer network, or computer program (computer trespass); or examine Sitton's personal data (computer invasion of privacy). Thus, Stanton's actions do not fall within the scope of subsections (a), (b), or (c) of OCGA § 16-9-93.

Another element of these offenses — lack of authority — is also absent.[8] The term "without authority" is defined to include "the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network."[9] In the case at bar, Stanton found the incriminating e-mails on the computer Sitton used to conduct business for PDI. This computer was located in PDI's offices but was actually owned by Sitton. The trial court found that Stanton had authority to inspect this computer pursuant to the computer usage policy contained in PDI's Employee Manual, which Sitton had agreed to abide by when he started work with PDI.

Contrary to Sitton's contention, PDI's computer usage policy was not limited to PDI-owned equipment. The policy adverted to the necessity for the company "to be able to respond to proper requests resulting from legal proceedings that call for electronically-stored evidence" and provided that for this reason, its employees should not regard "electronic mail left on or transmitted over these systems" as "private or confidential." The trial court, acting as finder of fact, found that Stanton looked at an e-mail on the screen of Sitton's computer at PDI. Whether the e-mail was stored there permanently

---

[7] OCGA § 16-9-93 (c).

[8] See *DuCom v. State*, 288 Ga. App. 555, 562-563 (4) (654 SE2d 670) (2007) (evidence sufficient to show computer theft where defendant employee copied employer's data without authority); *Stargate Software Intl. v. Rumph*, 224 Ga. App. 873, 879-880 (6) (482 SE2d 498) (1997) (jury issue as to whether defendant had knowledge that its use of plaintiff's computers was without authority).

[9] OCGA § 16-9-92 (18). " 'Computer network' means a set of related, remotely connected computers and any communications facilities with the function and purpose of transmitting data among them through the communications facilities." OCGA § 16-9-92 (2).

or only temporarily, the e-mail was subject to review under the company's computer usage policy. Even if the e-mail was "stored" elsewhere, the company's policy also stated that "PDI will . . . inspect the contents of computers, voice mail or electronic mail in the course of an investigation triggered by indications of unacceptable behavior."

Sitton's reliance on *Pure Power Boot Camp v. Warrior Fitness Boot Camp*[10] is misplaced. In that case, a former employer hacked into its former employee's e-mail accounts without authorization.[11] In the case before us, the trial court did not find evidence of hacking. Instead, the court found that, when Stanton moved the mouse, the e-mail account appeared on the screen of Sitton's computer. Sitton challenges this finding, but because there is evidence to support it, we will not disturb it on appeal.[12] Because Stanton's actions were not taken "without authority," the trial court did not err in denying Sitton's claim under OCGA § 16-9-93.

2. Sitton contends that the trial court erred in ruling for appellees on his claim for common law invasion of privacy based upon an "intrusion upon [his] seclusion or solitude, or into his private affairs."[13] We disagree.

"The 'unreasonable intrusion' aspect of the [tort of] invasion of privacy involves a prying or intrusion, which would be offensive or objectionable to a reasonable person, into a person's private concerns."[14] In order to show the tort of unreasonable intrusion, a plaintiff must show "a physical intrusion which is analogous to a trespass";[15] however, "this 'physical' requirement can be met by showing that the defendant conducted surveillance on the plaintiff or otherwise monitored [plaintiff's] activities."[16] In the case before us, no such surveillance took place.

Even if Stanton's review of Sitton's e-mails could be seen as "surveillance," it still does not rise to the level of an unreasonable intrusion upon Sitton's seclusion or solitude, because Stanton's

---

[10] 587 FSupp.2d 548, 555 (I) (A), 559 (I) (D) (S.D.N.Y. 2008) (applying the Stored Communications Act, 18 USC § 2701 et seq.).

[11] Id. at 552.

[12] *Brannon v. Perryman Cemetery*, 308 Ga. App. 832, 833 (709 SE2d 33) (2011) ("appellate courts will not disturb fact findings of a trial court if there is any evidence to sustain them") (citation omitted).

[13] (Footnote omitted.) *Cabaniss v. Hipsley*, 114 Ga. App. 367, 370 (151 SE2d 496) (1966) (listing four types of invasion of privacy, one of which is intrusion).

[14] (Citations omitted.) *Yarbray v. Southern Bell &c. Co.*, 261 Ga. 703, 705 (1) (409 SE2d 835) (1991).

[15] (Citations and punctuation omitted.) *Anderson v. Mergenhagen*, 283 Ga. App. 546, 550 (2) (642 SE2d 105) (2007).

[16] Id.

activity was "reasonable in light of the situation."[17] Stanton acted in order to obtain evidence in connection with an investigation of improper employee behavior.[18] In the case before us, as in *Yarbray*, "the company's interests were at stake."[19] Stanton had every reason to suspect that Sitton was conducting a competing business on the side, as in fact he was. As our Supreme Court has noted, "[T]here are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress."[20] The trial court correctly found that Stanton's perusal of Sitton's e-mail on Sitton's computer, which Sitton used in conducting business for PDI, did not constitute such an unreasonable intrusion as to rise to the level of invasion of privacy.[21]

3. Sitton argues that the Employee Manual was actually a contract, to which the rules for construction of contracts should be applied. Sitton has failed to show this Court that he raised this argument below, that the trial court ruled on it, or that he preserved the alleged error for our consideration.[22] Therefore, this enumeration of error presents nothing for appellate review. "[An] appellate court will not consider an issue raised for the first time on appeal, because the trial court has not had the opportunity to consider it."[23]

4. Sitton asserts that the trial court erred in admitting into evidence an e-mail and the PDI Employee Manual. This enumeration of error fails.

(a) Sitton contends that the trial court erred in admitting into evidence an incriminating e-mail which he sent to Debbie Burkett at Apex Printing on September 7, 2008,[24] and which Stanton subsequently found on Sitton's computer at PDI. Sitton contends that the e-mail was not admissible because Stanton obtained it in violation of OCGA § 16-11-62 (3), a statute concerning unlawful eavesdropping or surveillance.[25]

---

[17] Id. at 551 (2).

[18] See id. ("Reasonable surveillance is recognized as a common method to obtain evidence to defend a lawsuit").

[19] *Yarbray*, supra.

[20] (Citation and punctuation omitted.) Id. Accord *Udoinyion v. Re/Max of Atlanta*, 289 Ga. App. 580, 584 (657 SE2d 644) (2008).

[21] See discussion of "unreasonable intrusion" tort in *Benedict v. State Farm Bank*, 309 Ga. App. 133, 137 (1) (a) (709 SE2d 314) (2011) (defendant's annoying calls to plaintiff did not amount to actionable intrusion where no surveillance, physical trespass, or physical touching was alleged).

[22] See Court of Appeals Rule 25 (a) (1).

[23] (Citation and punctuation omitted.) *Thompson v. Princell*, 304 Ga. App. 256, 259 (a) (696 SE2d 91) (2010).

[24] Sitton and the trial court both misstated the date of this e-mail as September 15, 2008.

[25] Under OCGA § 16-11-67, evidence obtained in violation of OCGA § 16-11-62 is not admissible.

OCGA § 16-11-62 (3) makes it unlawful for anyone "to go on or about the premises of another or any private place . . . for the purpose of invading the privacy of others by eavesdropping upon their conversations or secretly observing their activities." This statute, by its plain language, is not applicable to the situation at bar. First, the evidence does not show that Stanton went "on or about the premises of another or any private place." On the contrary, Stanton went into Sitton's office at PDI. This office was owned by the business of which Stanton was the chief executive officer and was used by an employee, Sitton, who was under Stanton's authority. There is no evidence that Stanton eavesdropped on Sitton's conversations or secretly observed his activities. The trial court did not err in admitting the disputed e-mail.

(b) Sitton contends that the trial court abused its discretion in denying his motion to strike PDI's Employee Manual from evidence. Sitton argues that appellees did not admit the Employee Manual into evidence at trial and that the Manual was not in compliance with the "best evidence" rule.

This enumeration is not supported by the record. Sitton himself introduced the Employee Manual into evidence, without objection from appellees, during the motion in limine phase of the trial.[26] Sitton did not request that the Manual be admitted for a limited purpose at that time, and it was admitted into evidence without limitation. During his case-in-chief, Sitton testified on direct, based in part on the Employee Manual. During appellees' case-in-chief, appellees' counsel asked Sitton on cross, "Have you looked at the [Employee Manual] that's been admitted into evidence in this case?" Sitton did not object at that time or during the subsequent testimony concerning the Employee Manual; in particular, Sitton did not object on "best evidence" grounds. Several months after the trial, Sitton filed a motion to strike evidence relating to the Employee Manual. The trial court denied this motion.

In light of the fact that Sitton himself introduced this evidence, relied on it in his case-in-chief, and failed to object when Stanton's counsel described it as having been admitted into evidence in the case, he has waived any purported error in the denial of his motion to strike. Sitton "cannot now complain on appeal of alleged error which [he] induced and in which [he] specifically acquiesced."[27]

---

[26] The trial court's ruling on the motion in limine addressed only the admissibility of the September 7, 2008, e-mail (which, as noted above, the trial court mistakenly referred to as the September 15 e-mail).

[27] (Footnote omitted.) *Cherokee Nat. Life Ins. Co. v. Eason*, 276 Ga. App. 183, 187 (2) (622 SE2d 883) (2005).

Self-induced error does not provide ground for reversal.[28]

5. In his fifth enumeration of error, Sitton challenges the trial court's entry of judgment against him on PDI's counterclaim for breach of duty of loyalty. We find no error.

Sitton first asserts that he was an independent contractor, not an employee, of PDI, but he has failed to support this argument by citation to the record or to authority. This claim of error is therefore deemed abandoned.[29] Even had the alleged error not been abandoned, however, it is without merit. Ample evidence in the record supports the trial court's finding that Sitton was an at-will employee of PDI, hired as an exclusive outside salesperson; that he reported to Stanton, who had the authority to control the time, manner, and method of Sitton's performance of his duties; that Stanton had the authority to fire him; and that, pursuant to the Employee Manual, he was subject to rules or policies which PDI might adopt in the future.[30] Moreover, there was evidence that Sitton had authority to solicit business on PDI's behalf and to bind PDI for certain obligations, which authorized the trial court to find that Sitton, as PDI's agent, owed a fiduciary obligation to his employer, PDI.[31]

Sitton next asserts that he owed no duty of loyalty to PDI, but he does not address this argument in his brief. Instead, he argues that appellees "failed to meet their burden of establishing entitlement to relief for misappropriation of a business opportunity." This argument is misplaced. Appellees did not assert, and the trial court did not rule on, this ground. Sitton's brief gives no indication whether this argument was raised below. For the reasons stated in Division 3 above, we cannot consider this argument on appeal.

As to Sitton's unsupported argument that he did not owe any duty of loyalty or fiduciary duty to his employer PDI, we conclude that it is without merit. Although an employee does not breach the fiduciary duty owed to his employer simply by making plans, while he is still employed, to enter a competing business at a future time,[32] "[h]e is not . . . entitled to solicit customers for a rival business

---

[28] *Harper v. Hurlock*, 281 Ga. App. 265, 266 (635 SE2d 874) (2006).

[29] Court of Appeals Rule 25 (c) (2).

[30] See *Davis v. Beasley Timber Co.*, 241 Ga. App. 706, 707-708 (1) (527 SE2d 221) (1999), citing *Ross v. Ninety-Two West, Ltd.*, 201 Ga. App. 887, 891-892 (3) (412 SE2d 876) (1991) (contract describing party as "independent contractor" does not control if at the same time it provides that he shall be subject to any employer rules adopted in future).

[31] See *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 295 Ga. App. 54, 58 (2) (670 SE2d 874) (2008). See also *Physician Specialists in Anesthesia v. Wildmon*, 238 Ga. App. 730, 735 (3) (521 SE2d 358) (1999) ("a cause of action against an employee for breach of loyalty must be based upon a fiduciary duty owed by the employee and must rise and fall with any claim for breach of fiduciary duty") (footnote omitted).

[32] *Hanson Staple Co. v. Eckelberry*, 297 Ga. App. 356, 358 (1) (677 SE2d 321) (2009).

before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business."[33] Here, the trial court found that competition against PDI by its employees was specifically prohibited by the terms of PDI's Employee Manual; that Sitton agreed to abide by the Employee Manual; and that Sitton engaged in a rival business through SSA while he was employed by PDI. Thus, the trial court's finding that Sitton breached his duty of loyalty to PDI was supported by some evidence and will not be disturbed on appeal.[34]

6. Without citing authority, Sitton asserts error in the trial court's calculation of damages. This enumeration fails.

The trial court found that PDI's loss of business to SSA caused PDI damage and resulted in layoffs of employees. Evidence adduced at trial showed the total amounts Sitton billed for SSA's print services while he was still employed by PDI. The trial court treated these amounts as gross sales lost by PDI due to Sitton's breach of loyalty and fiduciary duty. The court then multiplied the 2007 and 2008 totals by PDI's profit percentage experienced during those respective years to arrive at the total net profit lost by PDI due to Sitton's diversion of this business to SSA. That the amount the court awarded exceeded the amount of commissions SSA paid to Sitton during this time period is irrelevant. The question of damages is ordinarily one for the jury.[35] The trial court, acting as finder of fact, issued an award well within the range of evidence and testimony presented at trial.[36]

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED SEPTEMBER 28, 2011 —
RECONSIDERATION DENIED NOVEMBER 3, 2011.

*Stephen M. Katz, Victor S. Roberts*, for appellant.

---

[33] (Citation and punctuation omitted.) *Nilan's Alley, Inc. v. Ginsburg*, 208 Ga. App. 145 (1) (430 SE2d 368) (1993). Accord *Instrument Repair Svc. v. Gunby*, 238 Ga. App. 138, 140 (1) (518 SE2d 161) (1999). See also OCGA § 10-6-25 ("The agent shall not make a personal profit from his principal's property").

[34] Compare *Vernon Library Supplies v. Ard*, 249 Ga. App. 853, 855 (3) (550 SE2d 108) (2001) (judgment for employee following bench trial affirmed where some evidence supported conclusion that employee did not directly compete with employer before the end of his employment).

[35] OCGA § 51-12-12 (a).

[36] See *T. C. Property Mgmt. v. Tsai*, 267 Ga. App. 740, 741 (600 SE2d 770) (2004).

*Fisher & Phillips, Burton F. Dodd*, for appellees.