311 Ga. 768
FINAL COPY

S20G1001. KINSLOW v. THE STATE.

PETERSON, Justice.

Jereno Sadatrice Kinslow appeals his felony conviction for computer trespass in violation of OCGA § 16-9-93 (b) (2). The conviction is premised on evidence that Kinslow altered his employer's computer network settings so that e-mail messages meant for Kinslow's boss would also be copied and forwarded to Kinslow's personal e-mail account. The Court of Appeals affirmed Kinslow's conviction, and we granted Kinslow's petition for certiorari, posing the question of whether Kinslow's conduct constituted a violation of OCGA § 16-9-93 (b) (2). Although the statute in general is extremely broad, the portion of (b) (2) on which the State exclusively relies does not reach Kinslow's conduct. Accordingly, we conclude that the evidence presented at Kinslow's trial was insufficient to support his conviction under *Jackson v.*

*Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and we reverse.

Viewed in the light most favorable to the verdict, the evidence presented at trial shows that, in 2013, Kinslow was an information technology ("IT") employee of the City of Norcross ("the City"). In October 2013, Greg Cothran was hired to manage the IT department, with an objective to increase the reliability and efficiency of the City's computer system. Shortly after Cothran started his new position, he began having difficulties with Kinslow. In November 2013, Cothran criticized Kinslow's work performance, which led to an argument and a loud outburst from Kinslow. Due to Kinslow's behavior, Cothran became concerned that Kinslow might damage the City's computer network. As a result, Cothran attempted to place certain safety measures on the system, and Kinslow's employment was eventually terminated in June 2014.

In August 2014, Monique Lang, the City Clerk, sent an e-mail from her work account to Cothran at his work account. Lang addressed this message solely to Cothran. In response, Lang

received a "bounce-back" e-mail notification stating, in relevant part, that Lang's e-mail was undeliverable to a recipient with an "@me.com" e-mail address. Lang alerted Cothran about this occurrence, and subsequent investigation revealed that the @me.com e-mail address was a personal account that had been established by Kinslow. The City also discovered that the City's computer network settings had been altered by checking a box in the City's computer program to cause Cothran's incoming e-mail messages to be copied and forwarded to Kinslow's personal @me.com account. The forwarding of Cothran's e-mail messages began in approximately December 2013, while Kinslow was still employed by the City. At that time, only Cothran and Kinslow had the necessary "administrator-level access" to alter the settings in order to forward Cothran's incoming e-mails. This forwarding continued until it was discovered in August 2014, two months after Kinslow's termination. Evidence indicates that Kinslow routinely accessed the @me.com account from his cell phone prior to discovery by the City.

At the end of a jury trial, Kinslow was found guilty of one count

of violating OCGA § 16-9-93 (b) (2) and sentenced to ten years of probation. The Court of Appeals affirmed. See *Kinslow v. State*, 353 Ga. App. 839 (839 SE2d 660) (2020). The only question before this Court is whether the evidence presented at trial supported Kinslow's conviction for computer trespass under OCGA § 16-9-93 (b) (2).[1]

> When we consider whether the evidence [was] legally sufficient to sustain a conviction under *Jackson*, we view the evidence in the light most favorable to the verdict, draw every reasonable inference from the evidence that is favorable to the verdict, ignore any conflicts or inconsistencies in the evidence, assume that the jury reasonably believed every word of testimony favorable to the verdict and reasonably disbelieved every word unfavorable to it, and only then inquire whether any reasonable person could conclude that the State has proved the guilt of the accused beyond a reasonable doubt.

*Debelbot v. State*, 308 Ga. 165, 168 n.6 (839 SE2d 513) (2020) (citing *Jackson*, 443 U.S. at 319).

---

[1] The Court of Appeals concluded that Kinslow's challenge to the accusation was not properly before that court, as he did not file a general demurrer or a motion in arrest of judgment. See *Kinslow*, 353 Ga. App. at 841 (1). That court also concluded that the trial evidence was sufficient under *Jackson*. See id. at 842-843 (2). We granted certiorari only as to the Court of Appeals's determination that the evidence was sufficient, and this opinion addresses only that issue.

4

OCGA § 16-9-93 (b) (2) defines the offense of computer trespass, in relevant part, as "us[ing] a computer or computer network with knowledge that such use is without authority and with the intention of . . . [o]bstructing, interrupting, or in any way interfering with the use of a computer program or data[.]" Kinslow was charged with committing computer trespass by "us[ing] a computer network with knowledge that such use was without authority and with the intention of obstructing and interfering with data from a computer, by copying Greg Cothran's emails and causing them to be forwarded to his own private email account." The State thus was required to prove that Kinslow used a computer network knowingly without authority with the intention of obstructing or interfering with the use of data.[2] We conclude that the evidence

<hr>

[2] The trial court gave the jury an instruction broader than the basis on which Kinslow was charged in the accusation:

I charge you that a person commits the offense of computer trespass when such person uses a computer or computer network with knowledge that such use is without authority and with the intention of: deleting or in any way removing, either temporarily or permanently, any computer program or data from a computer or a computer network; or obstructing, interrupting, or in any way

5

presented at trial was insufficient to prove that Kinslow's use was done with the intention of obstructing or interfering with the use of data.[3]

interfering with the use of a computer program or data; or altering, damaging, or in any way causing the malfunction of a computer, computer network, or a computer program, regardless of how long the alteration, damage, or malfunction persists.

The State in its brief to this Court, however, expressly waived any reliance on the "computer program" language in the "use of a computer program or data" phrase of the statute. While we are not bound by such a concession, see *Holt v. Ebinger*, 303 Ga. 804, 808 n.3 (814 SE2d 298) (2018), we choose to accept it here, particularly given the potential due process concerns involved in convicting a defendant on a ground not charged in the accusation. See *Pippen v. State*, 299 Ga. 710, 713 (2) (b) (791 SE2d 795) (2016) ("We have held that the giving of a jury instruction which deviates from the indictment violates due process where there is evidence to support a conviction on the unalleged manner of committing the crime and the jury is not instructed to limit its consideration to the manner specified in the indictment." (citation and punctuation omitted)). We express no opinion on whether there was sufficient evidence to convict Kinslow under OCGA § 16-9-93 (b) (2) for "[o]bstructing, interrupting, or in any way interfering with the use of a computer program," or whether, even if there had been sufficient evidence, due process would nevertheless forbid conviction on that ground.

In addition, although the State's brief to this Court does not disclaim reliance on the "interrupting" language of the statute as explicitly as it does the "use of a computer program" language of the statute, the State does say the question for this Court is "whether Appellant's actions of altering network settings to cause the emails to be forwarded was done with the intention of obstructing or interfering with data[.]" On the other hand, in arguing that Kinslow's actions amounted to "obstructing . . . the use of . . . data," the State uses "interrupting" as one possible definition of "obstructing." At any rate, as discussed below, we reject this argument that Kinslow's actions amounted to "interrupting" the use of data.

[3] The Court of Appeals stated that "[i]t is undisputed that Kinslow did

"The fundamental rules of statutory construction require us to construe [a] statute according to its own terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." *La Fontaine v. Signature Research, Inc.*, 305 Ga. 107, 108 (823 SE2d 791) (2019) (citation and punctuation omitted). "In construing language in any one part of a statute, a court should consider the statute as a whole." Id.

The Court of Appeals concluded simply that Kinslow's "act of altering network settings to copy and redirect his supervisor's incoming e-mail . . . amounts to conduct sufficient to constitute the offense of computer trespass, i.e., '(o)bstructing, interrupting, or in any way interfering with the use of a computer program or data.'" *Kinslow*, 353 Ga. App. at 842 (1). The State in particular argues here that the evidence authorized the jury to conclude that Kinslow "acted with the intention of obstructing or interfering with data."[4]

not have authority or permission to forward his supervisor's e-mail[.]" *Kinslow*, 353 Ga. App. at 842 (1).

[4] The statutory language actually prohibits "interfering with *the use of* . . . data[.]" OCGA § 16-9-93 (b) (2) (emphasis supplied). We observe that

7

We disagree.

We can reject fairly quickly the State's argument that the evidence supported a finding that Kinslow acted with the intention of "obstructing" data. Using a dictionary contemporaneous with the 1991 enactment of the statute, "obstruct" may be defined as "to block or stop up . . . with obstacles or impediments"; "to hinder" or "impede"; or "to cut off from being seen." See Webster's New World Dictionary of American Language 983 (2d College ed. 1980). Contrary to the State's suggestion, the State presented no evidence that Kinslow's e-mail forwarding scheme "blocked" or even "hindered" the flow of data in the form of e-mails to Cothran, who continued to receive those e-mails intended for him. Rather, the evidence showed only that Kinslow's actions created an additional flow of data to another account. And although the State suggests that "interrupt" is another meaning of the term "obstruct," that does not help the State at all. "Interrupt" carries a similar definition of

---

interfering with data is not necessarily the same as interfering with "the use of" data. But this case does not require us to examine any such distinction.

8

stopping or hindering, although "interrupt" often denotes a more temporary stoppage than "obstruct," such as "to make a break in the continuity of." See id. at 737. Again, the State presented no evidence that Kinslow's actions hindered the flow of e-mails to Cothran, either permanently or temporarily.

As discussed in more detail below, the term "interfere" carries a range of meanings, from merely meddling where one's help or interest is unwelcome, to stopping something from happening. Thus, the question of whether Kinslow acted with the intention of "in any way interfering" with the use of data is a closer question. But canons of statutory construction indicate that the term "interfering" as used in OCGA § 16-9-93 (b) (2) carries a narrower definition akin to "hindering" — in this context, hindering the use of data. We conclude that Kinslow's actions did not violate that narrower definition.

Dictionary definitions of "interfere" contemporaneous with the enactment of the statute include meanings such as "intrude in the affairs of others," "meddle," and "intervene." See The American Heritage Dictionary of the English Language 940 (3d ed. 1992);

9

Black's Law Dictionary 814 (6th ed. 1990). The State also cites language from an academic work included in a legal dictionary, to suggest that "interference" happens whenever one "'bring[s] about a particular result which is different from that which would have been produced if the mechanism had been allowed unaided to follow its inherent principles.'" See Black's Law Dictionary (11th ed. 2019) (quoting 2 Friedrich A. Hayek, Law, Legislation, and Liberty, 128-129 (1976)). That is a particularly broad definition.

But other dictionaries from the relevant time period also include much narrower definitions of "interfere" closer to "obstruct," such as "[t]o check; hamper; hinder; [or] infringe"; "to come into collision or opposition"; and "[t]o come between so as to be a hindrance or an obstacle." See The American Heritage Dictionary of the English Language 940 (3d ed. 1992); Black's Law Dictionary 814 (6th ed. 1990); Webster's New World Dictionary of the American Language 734 (2d College ed. 1980). And Georgia case law reflects this narrower sort of definition of "interfere." See *Huckaby v. Cheatham*, 272 Ga. App. 746, 751 (1) (612 SE2d 810) (2005) (parking

10

on easement for shared driveway would "interfere" with neighbor's ingress and egress over the easement because it would "hinder or infringe" on neighbor's ability to use the easement); *Ratliff v. State*, 133 Ga. App. 256, 256-257 (3) (211 SE2d 192) (1974) (rejecting challenge to jury charge on what constitutes "interfering" with police officers in the performance of their lawful duties, noting that the trial court said, "I think the test that the law requires would be that it effectively hindered or impeded the law enforcement in the carrying out of their duties" (punctuation omitted)).

It is important to remember that "when we determine the meaning of a particular word or phrase in a constitutional provision or statute, we consider text in context, not in isolation." *Elliott v. State*, 305 Ga. 179, 186 (II) (B) (824 SE2d 265) (2019); see also *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth County*, 318 Ga. App. 499, 502 (1) (734 SE2d 242) (2012) ("[E]ven if words are apparently plain in meaning, they must not be read in isolation and instead, must be read in the context of the regulation as a whole."). And several canons of construction addressing the importance of

examining the context in which a word appears point us toward a narrower definition of "interfering."

First, under the canon of noscitur a sociis, the word "interfering" should be understood in relation to the other words in the statute, because "words, like people, are judged by the company they keep." *Warren v. State*, 294 Ga. 589, 590-591 (1) (755 SE2d 171) (2014) (citation and punctuation omitted). In particular, we normally should "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to" an act of the General Assembly. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (115 SCt 1061, 131 LE2d 1) (1995) (citation and punctuation omitted). Here, this canon counsels us to afford "interfering" a meaning that is consistent with the category of words to which "obstructing" and "interrupting" belong, if such a meaning is reasonable. See id. at 573-575 (applying noscitur a sociis canon to conclude that § 2 (10) of the federal Securities Act of 1933, which defined a "prospectus" as "any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or

12

television, which offers any security for sale or confirms the sale of any security," refers only to documents of wide dissemination, not all written communications). As noted above, "obstruct" and "interrupt" carry meanings akin to "hinder" or "stop." A meaning of "interfering" consistent with the terms "obstructing" and "interrupting" thus would be more like "to come between so as to be a hindrance or an obstacle" than merely "intruding," "meddling," or "intervening."

Often applied in conjunction with the noscitur a sociis canon, the canon of ejusdem generis also counsels reading "interfering" narrowly.

> [W]hen a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis [i.e., of the same kind or class] with the things specifically named, unless, of course, there is something to show that a wider sense was intended.

*Center for a Sustainable Coast v. Coastal Marshlands Protection Comm.*, 284 Ga. 736, 737-738 (1) (670 SE2d 429) (2008) (citation and punctuation omitted). Here, "interfering" is a general term of enlargement and thus should be construed as being of the same kind

13

or class as "obstructing" and "interrupting." Again, that means we should construe "interfering" as requiring a level of disruption commensurate with the meanings of the preceding words "obstruct" and "interrupt," something more narrow than merely inserting oneself into a situation without request or necessity. See id. at 739 (1) (limiting meaning of "otherwise alter" in OCGA § 12-5-286 (a) (1), which declared that "[n]o person shall remove, fill, dredge, drain, or otherwise alter" marshlands without first obtaining a permit, to altering in a physical manner akin to removing, filling, dredging, or draining); see also *Inquiry Concerning Judge Robert M. Crawford*, 310 Ga. 403, 409 (851 SE2d 572) (2020) (Blackwell, J., concurring) (explaining that applying ejusdem generis suggests that constitutional provision for judges to be "removed, suspended, or otherwise disciplined" does not include power to forever disqualify someone from holding judicial office again (citation and punctuation omitted)).

Moreover, courts "typically use *ejusdem generis* to ensure that a general word will not render specific words meaningless." *CSX*

*Transp. v. Ala. Dept. of Revenue*, 562 U.S. 277, 295 (131 SCt 1101, 179 LE2d 37) (2011). And, relatedly, "courts should avoid a statutory construction that will render some of the statutory language mere surplusage." *Thornton v. State*, 310 Ga. 460, 469 (3) (851 SE2d 564) (2020) (citation and punctuation omitted); see also *Campaign for Accountability v. Consumer Credit Research Foundation*, 303 Ga. 828, 832 (2) (815 SE2d 841) (2018).

If OCGA § 16-9-93 (b) (2) is as broad as the State suggests, "obstructing" and "interrupting" become entirely surplusage and redundant; in such an event, the relevant text would need to list only "interfering."[5] We should presume that the General Assembly

---

[5] Such a construction of OCGA § 16-9-93 (b) (2) also would potentially render superfluous other subsections of OCGA § 16-9-93, particularly OCGA § 16-9-93 (b) (1) ("Any person who uses a computer or computer network with knowledge that such use is without authority and with the intention of . . . [d]eleting or in any way removing, either temporarily or permanently, any . . . data from a computer or computer network . . . shall be guilty of the crime of computer trespass."). The definition relied on by the State also might render superfluous OCGA § 16-9-93 (c), which proscribes "us[ing] a computer or computer network with the intention of examining any employment, medical, salary, credit, or any other financial or personal data relating to any other person with knowledge that such examination is without authority[.]" Indeed, it is possible that Kinslow could have been charged properly under subsection (c) in this case, assuming that the State could have proved that Kinslow used

15

included the words "obstructing" and "interrupting" for a reason and avoid reading "interfering" so broadly as to effectively render the preceding terms unnecessary. See *Gustafson*, 513 U.S. at 574-575 (applying the canon against surplusage to the effect that reading "communication" to include every written communication "would render 'notice, circular, advertisement, (and) letter' redundant").

On the other hand, defining "interfering" along the lines of "coming in between so as to be a hindrance or an obstacle" is not so narrow a definition that it means precisely the same thing as "obstructing" or "interrupting." As noted above, "obstruct" often means to stop or block passage of something; in this sort of case, it might mean to stop the flow of data altogether. "Interrupt" can mean to inflict more of a temporary stoppage, in the sense of making a break in the continuity of something; in this sort of case, it might mean that the data stops flowing intermittently or temporarily.

the City's computer network to copy and forward Cothran's e-mails with the intention of examining Cothran's personal data. The other provisions of OCGA § 16-9-93 are broad and provide ample means to deter and punish a wide range of conduct, without expanding the meaning of "interfering" as used in OCGA § 16-9-93 (b) (2).

16

Even ascribing to "interfering" the narrow meaning of "hindering," "interfering" is a term of enlargement that has some overlap with the terms "obstructing" and "interrupting," but also means something additional. Applying this definition, the term "interfering" could mean a slowing of the flow of data that is neither "obstructing" nor "interrupting" — for example, changing a network's e-mail settings such that a particular account receives e-mails five minutes after all other intended recipients do.

Applying each of the above canons — noscitur a sociis, ejusdem generis, and the canon against surplusage — leads to the conclusion that "interfering" as used in OCGA § 16-9-93 (b) (2) requires a level of disruption consistent with the level of disruption inherent in the meanings of "obstructing" and "interrupting." Thus, proving that a person violated OCGA § 16-9-93 (b) (2) by "interfering" with the use of data requires proof that a person engaged in a level of interference that hindered the use of data.

But even if such meaning was not entirely clear, and if we were to conclude that the statute is ambiguous on this point, the rule of

lenity should resolve this ambiguity against the State. For more than 50 years, this Court has recognized and employed the rule of lenity when construing statutes in criminal cases. See, e.g., *Gee v. State*, 225 Ga. 669, 676 (7) (171 SE2d 291) (1969). "Under the rule of lenity, ambiguity in a statute defining a crime or imposing a penalty should be resolved in the defendant's favor." *State v. Hanna,* 305 Ga. 100, 103 (2) (832 SE2d 785) (2019) (citation and punctuation omitted); see also *State v. Hudson,* 303 Ga. 348, 353 (3) n.5 (812 SE2d 270) (2018). It "is applied only when an ambiguity still exists after having applied the traditional canons of statutory construction." *Hanna,* 305 Ga. at 102 (2) (citation and punctuation omitted). Here, if, after consideration of the other canons of construction, there were still ambiguity as to whether "interfering" should be read in its narrow sense akin to "hindering," we would adopt that narrower construction. See *Adams v. State*, 340 Ga. App. 1, 6-7 (1) (795 SE2d 330) (2016) (Peterson, J.).[6]

---

[6] Application of the rule of lenity is not necessary to the conclusion that we ultimately reach here. And we certainly need not rely on the apparently

18

Finally, the use of the phrase "in any way" prior to "interfering" does not mean that we must interpret the term "interfering" more broadly. That phrase does not tell us which of the definitions of "interfering" applies; it just says that whatever "interfering" means, undertaking that action "in any way" qualifies. As discussed above, the term "interfering" may be defined in a variety of different, non-overlapping ways. A word means something particular, not several different things simultaneously.

In the context of this statute, the most plausible meaning of "interfering" is hindering the use of data in some way. Applying this narrow construction, the State did not present sufficient evidence as a matter of constitutional due process to convict Kinslow as charged under OCGA § 16-9-93 (b) (2). On this record, a rational jury could conclude at most that Kinslow altered the City's computer network

---

far-reaching breadth of the statute as constructed by the State. But as the United States Supreme Court recently observed in a case about a similar federal statute, the State's "interpretation of the statute would attach criminal penalties to a breathtaking amount of commonplace computer activity." *Van Buren v. United States*, 593 U.S. __, __ (141 SCt 1648, __ LE2d __) (2021). This potential "fallout underscores the implausibility of the [State]'s interpretation." Id.

settings to cause a colleague's incoming e-mail messages to be copied and forwarded to a personal account associated with Kinslow. There is no evidence that Kinslow by his actions hindered the flow of data to any intended recipient or otherwise hindered the use of data, only evidence that he enabled a copy of that data to flow to an additional recipient as well.

*Judgment reversed. All the Justices concur, except Melton, C. J., and Ellington and LaGrua, JJ., who dissent.*

BETHEL, Justice, concurring.

I concur fully in the Court's opinion and write separately only to emphasize that the State prosecuted this case solely on the theory that Kinslow committed the crime of computer trespass by interfering with the use of data in violation of OCGA § 16-9-93 (b) (2). The State did not pursue a theory that Kinslow interfered with the operation of a computer program, which is also punishable under

20

the same Code section.[7] As the Court notes, following a proper construction of the relevant language, the State did not present evidence that Kinslow interfered with the use of data inasmuch as the data in question continued to flow as it was intended. What the evidence showed (when viewed in the light most favorable to the verdict) is that Kinslow caused the computer program (the email system) to replicate the data and forward that data to his own private address. I question whether this conduct might be construed as an interference with that computer program for purposes of OCGA § 16-9-93 (b) (2). The State's choices in its prosecution, however, obviate the need to answer that question today.

---

[7] Specifically, the accusation alleged that Kinslow used "a computer network with knowledge that such use was without authority and with the intention of obstructing and *interfering with data* from a computer, by copying Greg Cothran's emails and causing them to be forwarded to his own private email account[.]" (emphasis supplied). Further, in its briefing, the State stated: "[Kinslow] also contends that his conviction cannot be affirmed if he was found to have obstructed or interfered with a computer program as he was not charged with such[,] and [the State] agrees."

MELTON, Chief Justice, dissenting.

In reaching its erroneous conclusion, the majority rewrites part of the statute that is the subject of this case, ignores other plain language in that same statute which compels a different result, and upends the constitutional standard of review in sufficiency cases. There was sufficient evidence to support the jury's finding of guilt in this case. Accordingly, I dissent.

OCGA § 16-9-93 (b) (2) defines the offense of computer trespass, in relevant part, as "us[ing] a computer or computer network with knowledge that such use is without authority and with the intention of . . . [o]bstructing, interrupting, or in any way interfering with the use of a computer program or data."[8] So, the State was required to prove two main elements to satisfy OCGA §

---

[8] Kinslow was charged with committing computer trespass by "us[ing] a computer network with knowledge that such use was without authority and with the intention of obstructing and interfering with data from a computer, by copying Greg Cothran's emails and causing them to be forwarded to his private email account. . . ." Without objection, the trial court, however, instructed the jury on the entirety of OCGA § 16-9-93 (b) (2).

22

16-9-93 (b) (2): first, that Kinslow used a computer or computer network knowing he did not have authority to do so, and, second, Kinslow's use was done with the intention of obstructing, interrupting, or interfering with the use of a computer program or data. The sufficiency of the evidence for each of these elements will be considered in turn.

(a) Sufficient evidence was presented at trial to prove that Kinslow knew that his use of the City's computer network was done without authority. "'Without authority' includes the use of a computer or computer network in a manner that exceeds any right or permission granted by the owner of the computer or computer network." OCGA § 16-9-92 (18). Cothran testified that the City's policies allow only the mayor and members of the city council to have their e-mails forwarded. Cothran also testified that he never gave Kinslow permission to alter the City's network to establish the forwarding of Cothran's e-mails. So, there was sufficient evidence presented at trial to support the jury's finding that Kinslow used a "computer or computer network with knowledge that such use [was]

23

without authority." OCGA § 16-9-93 (a). See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

(b) There was also sufficient evidence that Kinslow's use of the City's computer network was done with the intention of "obstructing, interrupting, or in any way interfering with the use of" a computer program or data. Because OCGA § 16-9-93 (b) (2) lists these three actions in the disjunctive, any one of them may be sufficient to support a verdict of computer trespass. See *Gearinger v. Lee*, 266 Ga. 167, 168 (2) (465 SE2d 440) (1996) ("The natural meaning of 'or,' where used as a connective, is to mark an alternative and present choice, implying an election to do one of two things.") (citation and punctuation omitted.). See also *Reiter v. Sonotone Corp.*, 442 U. S. 330, 339 (99 SCt 2326, 60 LE2d 931) (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise.").

(i) It is simplest here to consider the meaning of "in any way interfering." In doing so,

we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage. We must also seek to effectuate the intent of the Georgia legislature. OCGA § 1-3-1 (a). In this regard, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole.

*Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018).[9]

Both before and after the enactment of OCGA § 16-9-93 (b) (2),

the definition of "interfere" has been consistent. "Interfere" has been

---

[9] OCGA § 16-9-91 provides the following as the legislative intent behind creating the computer crimes involved in this case:
The General Assembly finds that:
(1) Computer related crime is a growing problem in the government and in the private sector;
(2) Such crime occurs at great cost to the public, since losses for each incident of computer crime tend to be far greater than the losses associated with each incident of other white collar crime;
(3) The opportunities for computer related crimes in state programs, and in other entities which operate within the state, through the introduction of fraudulent records into a computer system, unauthorized use of computer facilities, alteration or destruction of computerized information files, and stealing of financial instruments, data, or other assets are great;
(4) Computer related crime operations have a direct effect on state commerce;
(5) Liability for computer crimes should be imposed on all persons, as that term is defined in this title; and (6) The prosecution of persons engaged in computer related crime is difficult under previously existing Georgia criminal statutes.

defined as "to come in or between for some purpose; to intervene . . . to intermeddle; to enter without invitation or right into the concerns of others," Webster's New Twentieth Century Dictionary (2d ed. 1983); "to interpose in a way that hinders or impedes: come into collision or be in opposition . . . to enter into or take a part in the concerns of others," Webster's Ninth New Collegiate Dictionary (9th ed. 1985); and "to come between so as to be a hindrance or an obstacle . . . to intervene or intrude in the affairs of others; meddle." The American Heritage Dictionary of the English Language (3d ed. 1992). Black's Law Dictionary (11th ed. 2019) primarily defines "interfere" as "[t]he act or process of obstructing normal operations or intervening or meddling in the affairs of others." And, in addition, OCGA § 16-9-93 (b) (2) provides that it is triggered when one "*in any way*" interferes with computer data, thereby plainly stating that "interfering" should be given broad meaning.

Here, the evidence showed that Kinslow, knowing that he lacked authority to do so, accessed the City's computer network and

26

altered the City's computer program,[10] thereby causing Cothran's e-mails to be duplicated and the duplicates to be diverted to Kinslow's personal e-mail account outside of the City's network. Kinslow's actions satisfied the plain meaning of "interfering." By manipulating the data stream to give himself access to Cothran's e-mails, Kinslow intermeddled in the affairs of others and the data intended to go to others with neither authority nor invitation. As such, there was sufficient evidence to support a finding that Kinslow interfered with the use of the City's computer program and its data. See *Jackson*, supra, 443 U. S. at 319 (III) (B).

Contrary to the majority opinion's assertion, it is of no consequence that the original e-mail made its way to Cothran's account. At the moment Kinslow entered into the City's computer program and checked the box that generated duplicate data, he had

---

[10] OCGA § 16-9-92 (4) provides:
"Computer program" means one or more statements or instructions composed and structured in a form acceptable to a computer that, when executed by a computer in actual or modified form, cause the computer to perform one or more computer operations. The term "computer program" shall include all associated procedures and documentation, whether or not such procedures and documentation are in human readable form.

27

committed exactly the sort of "trespass" that the statute was intended to reach. At that point, Kinslow had improperly used the computer to access data that he was not authorized to see. The fact that he obtained this data from an unauthorized copy does not diminish the crime, as trespass does not require the theft of data from its intended recipient — it requires only that one accesses that data from a place one is not authorized to be. The majority opinion educates wrongdoers that they are better off from both a detection standpoint and from prosecution as a matter of law if they simply copy data rather than block its delivery.

Moreover, the jury was instructed on the *entirety* of OCGA § 16-9-93 (b) (2) without objection. As such, the jury could have determined that there was sufficient evidence that Kinslow interfered with either data or a computer program by checking a box to alter his employer's computer program in order to duplicate data and redirect that data (in the form of an e-mail) to Kinslow's

28

personal account.[11] The majority avoids this possible alternative conclusion by the jury by "choosing to accept" the State's failure on appeal to rely on the "computer program" language of the statute. But *Jackson v. Virginia*, supra, allows no such choice. Once the jury renders its decision of guilt, the State does not have the burden on appeal to prove that the evidence was sufficient. As such, the State has nothing to waive, and this Court has nothing to "choose to accept." The State's concession cannot relieve this Court of its duty to independently review the transcript in the light most favorable to the verdict.[12]

---

[11] Kinslow would not be able to avoid the crime of computer trespass simply because a copy of Cothran's e-mail still made its way to Cothran. Kinslow's act of accessing the computer system in an unauthorized manner is the act required to commit computer trespass, not the act of preventing Cothran from receiving his mail. This becomes even more evident when considering the crime of computer theft, which may be committed when one uses a computer or computer network knowingly without authority and with the intention of taking another's property (defined to include data under OCGA § 16-9-92 (13)), "*whether or not* with the intention of depriving the owner of possession[.]" (Emphasis supplied.) OCGA § 16-9-93 (a) (1). It is clear that Kinslow's unauthorized "entrance" into the computer system with the requisite intention to interfere is all that is required for computer trespass. What happens after that unauthorized "entrance" does not forgive the trespass that has already occurred.

[12] Tellingly, the majority cites no applicable case law supporting its selective approach for reviewing the sufficiency of the evidence. *Holt v.*

(ii) To the extent that Kinslow contends that his actions did not affect "data" because the definition of data under the statute must be read to exclude e-mails, the plain language of the statute undermines his argument. OCGA § 16-9-92 (5) provides:

"Data" includes any representation of information, intelligence, or data in any fixed medium, including documentation, computer printouts, magnetic storage media, punched cards, storage in a computer, or transmission by a computer network.

In relevant part, an "electronic communication" is defined as

any transfer of signs, signals, writing, images, sounds, *data*, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system that affects interstate or foreign commerce[.]

(Emphasis supplied.) OCGA § 16-9-92 (6). Thus, based on these

---

*Ebinger*, 303 Ga. 804, 808 n.3 (814 SE2d 298) (2018), relied on by the majority, ends the footnote in question with the following citation: "See *Trim v. Shepard*, 300 Ga. 176, 177 (794 SE2d 114) (2016) ("This Court . . . is not bound by the litigating position of the Warden, and *we have an obligation to decide for ourselves* whether the judgment of the habeas court is legally sound.") (emphasis supplied). This "obligation to decide for ourselves" is not removed by the manner in which the State frames its arguments, as the State, by its briefing in response to a defendant's sufficiency appeal, lacks the power to undo the constitutional soundness of a jury's verdict and alleviate an appellate court's independent obligation to decide the soundness of that verdict on a full record.

straightforward definitions, Kinslow's contention that "data" must be interpreted to exclude e-mails is indefensible. "Data" includes "any representation of information, intelligence, or data in any fixed medium, including . . . transmission by a computer network." An "electronic communication" includes "any transfer of . . . data." So, based on the unambiguous text of the statute, "data" is inclusive of e-mail communications, not exclusive. See, e.g., *Deal v. Coleman*, 294 Ga. 170, 173 (1) (a) (751 SE2d 337) (2013) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.") (citations and punctuation omitted).

(iii) Lastly, the State sufficiently proved that Kinslow intended to interfere with the use of the City's computer program and its data. Evidence presented at trial shows that, prior to termination of his employment, Kinslow evinced questionable behavior at work, including a loud outburst directed at Cothran when he criticized Kinslow's job performance. In fact, Cothran testified that Kinslow's behavior was so alarming that Cothran believed that Kinslow might

31

attempt to damage the City's computer network. And Kinslow's act of giving himself access to Cothran's e-mails, which required intentional acts to access the City's computer program and check the box required to forward Cothran's e-mails to Kinslow's personal address, occurred in temporal proximity to Kinslow's confrontation with Cothran, indicative of a decision to interfere. Furthermore, Kinslow's access to Cothran's e-mails continued *after* his termination, until it was finally discovered by the City.

Though circumstantial, this evidence is sufficient to support the jury's verdict in this case. OCGA § 24-14-6 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." However,

> [w]hether an alternative hypothesis raised by the defendant is "reasonable" is a question committed principally to the jury, and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of the guilt of the accused, we will not disturb that finding unless it is insupportable as a matter of law.

32

(Citation and punctuation omitted.) *Smith v. State*, 307 Ga. 680, 684 (838 SE2d 321) (2020). At trial, there was some testimony that forwarding e-mails to a personal account outside of a company's server might be a convenient way to be able to quickly determine whether the company's server might be down. In addition, Kinslow testified that his former boss, whom Cothran replaced, advised Kinslow to use this method, but Kinslow's former boss testified that he could not recall whether he gave Kinslow any such directions. Kinslow's reliance on his former boss's advice, possibly conveyed before Cothran was hired, is not persuasive. If Kinslow only wanted to monitor the network, as opposed to improperly accessing Cothran's e-mails, Kinslow could have forwarded his own e-mails, not those of anyone else. Accordingly, we cannot say that the jury's decision to reject Kinslow's explanation was not supportable as a matter of law. See id. Moreover, "'[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (Citation omitted.) *Vega v. State*,

285 Ga. 32, 33 (673 SE2d 223) (2009).[13]

3. In conclusion, when the evidence is viewed in the light most favorable to the verdict and OCGA § 16-9-93 (b) (2) is given its plain and ordinary meaning, the verdict in this case satisfied the standards set forth in *Jackson*, supra, 443 U. S. at 319 (III) (B). It makes no difference that Kinslow might have also been accused of violating other subsections of the applicable statute, and, though OCGA § 16-9-93 (b) (2), as it is currently written, might hypothetically criminalize a wide range of behavior not currently before us, that has no bearing on *this* appeal. Any decision to narrow the application of the plain and ordinary meaning of the statute is a matter for the General Assembly, not this Court. See *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers this Court does not have the

---

[13] *Sitton v. Print Direction, Inc.*, 312 Ga. App. 365 (718 SE2d 532) (2011), a case distinguishable on both its facts and holding, does not alter this result. In *Sitton*, an employer, who was expressly held to be acting *with authority to do so pursuant to the company's employee manual*, printed e-mails from a listing already displayed on the screen of his employee's personal computer. See id. at 368 (1).

authority to rewrite statutes.").

I am authorized to state that Justice Ellington and Justice LaGrua join this dissent.

Decided June 21, 2021.

Certiorari to the Court of Appeals of Georgia — 353 Ga. App. 839.

*Strickland Webster, Sydney R. Strickland, Leigh A. Webster*, for appellant.

*Patsy A. Austin-Gatson, District Attorney, Daniel W. A. Peach, Assistant District Attorney*, for appellee.