310 Ga. 460
FINAL COPY

S20G0613.  THORNTON v. THE STATE.

BLACKWELL, Justice.

In the parking lot of a gas station, a Department of Natural Resources (DNR) game warden told Christopher Thornton to turn down the volume of his car stereo. Thornton refused to comply, and he eventually drove away, dragging the game warden for a short distance. He later was arrested and charged with several crimes, including two counts of obstructing a game warden in the lawful discharge of his official duties.[1] Thornton was tried for these crimes by a Walker County jury and convicted. He appealed, arguing that

---

[1] Thornton was charged with one count of misdemeanor obstruction for refusing to comply with the instructions of the game warden and one count of felony obstruction for offering violence to the game warden. Under OCGA § 16-10-24 (a), "a person who knowingly and willfully obstructs or hinders any . . . game warden in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." And under OCGA § 16-10-24 (b), "[w]hoever knowingly and willfully resists, obstructs, or opposes any . . . game warden in the lawful discharge of his or her official duties by offering or doing violence to the person of such officer . . . shall be guilty of a felony . . . ." Both counts required the State to prove, among other things, that the game warden was in the lawful discharge of his official duties.

the evidence presented at trial was insufficient to sustain his convictions for obstruction because it failed to establish that the game warden was in the lawful discharge of his official duties at the time of the incident. In particular, Thornton argued that a game warden has no authority to enforce the Uniform Rules of the Road[2] — including OCGA § 40-6-14,[3] which limits the volume of sound that can be emitted from a stereo in a motor vehicle — in the parking lot of a gas station. In Thornton v. State, 353 Ga. App. 252 (836 SE2d 541) (2019), the Court of Appeals rejected these arguments and affirmed the judgment of conviction. We granted a petition for a writ of certiorari to review that decision, and although our analysis

---

[2] The provisions of Chapter 6 of Title 40 of the Code are known as the "Uniform Rules of the Road." See Ga. L. 1974, p. 633, § 1 ("Uniform Rules of the Road" enacted as Title 68A of the Code of 1933, the predecessor of Title 40, Chapter 6 of the current Code). In this opinion, we refer to the Uniform Rules of the Road simply as the "Rules of the Road."

[3] Section 40-6-14 (a) provides:

> It is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical sound-making device or instrument from within the motor vehicle so that the sound is plainly audible at a distance of 100 feet or more from the motor vehicle.

A violation of OCGA § 40-6-14 (a) is a misdemeanor. See OCGA § 40-6-14 (e).

differs somewhat from that of the Court of Appeals, we likewise conclude that the obstruction convictions can stand. Accordingly, we affirm the judgment of the Court of Appeals.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Thornton was parked at a gas pump outside a gas station in the City of LaFayette on January 10, 2013. A DNR game warden — on duty and in uniform — stopped at the gas station to refuel his DNR vehicle.[4] The game warden noticed that the stereo in Thornton's car was blaring music very loudly. The game warden approached Thornton, identified himself as a DNR law enforcement officer, and asked Thornton to turn down the volume of the stereo. When Thornton refused, the game warden told him that the loud music was in violation of state law, and Thornton became increasingly belligerent. The game warden then went to retrieve his radio from his DNR vehicle, instructing Thornton to remain outside

---

[4] In January 2013, game wardens were known as "conservation rangers." They were retitled "game wardens" in 2019, see Ga. L. 2019, p. 808, § 7, Act 264, and for the sake of simplicity, we refer to the officer in this case as a game warden.

3

his car. In defiance of this instruction, Thornton got into his car. The game warden returned, and as he approached Thornton again, he noticed that the music was blaring even more loudly. The game warden told Thornton to exit the car, informing him that he was under arrest for obstruction. Thornton refused to exit the car, and the game warden reached through an open window of the car in an attempt to grab Thornton's identification card. As the game warden did so, Thornton drove away, dragging the game warden a short distance, while the game warden instructed Thornton to bring his car to a stop.

Thornton was later arrested, charged with two counts of obstruction — a misdemeanor count for defying the instructions of the game warden, and a felony count for offering violence to the game warden — and convicted of those crimes. He appealed, and the Court of Appeals affirmed, rejecting Thornton's argument that the evidence failed to show that the game warden was in the lawful discharge of his official duties at the time of the incident. The Court of Appeals held that the game warden was authorized under OCGA

§ 40-13-30 to enforce the Rules of the Road, see <u>Thornton</u>, 353 Ga. App. at 254-255 (1), and it cited OCGA § 40-6-3 (a) (2) for the proposition that the Rules of the Road apply in parking lots, see 353 Ga. App. at 255 (1) n.6. We issued a writ of certiorari to review the decision of the Court of Appeals, directing the parties to address these two questions:

> 1. Does OCGA § 40-13-30 grant statewide arrest powers to Department of Natural Resources game wardens for violations of the Uniform Rules of the Road?
> 2. Do the provisions of OCGA § 40-6-1 et seq. apply generally to privately owned shopping centers, parking lots, or other similar areas that are not customarily used by the public as through streets or connector streets, see OCGA § 40-6-3 (a) (2)?

As we explain below, the answer to the first question is yes, game wardens do have authority to enforce the Rules of the Road at any location in Georgia where OCGA § 40-13-30 applies. And although the answer to the second question is no, the State presented evidence in this case that the parking lot of the gas station in question was used customarily as a through or connector street, and the evidence is not, therefore, insufficient to sustain the convictions.

Accordingly, we affirm the judgment of the Court of Appeals.

2. We first consider the extent to which game wardens have authority under OCGA § 40-13-30 to enforce the Rules of the Road, and we conclude the game warden in this case had such authority. We begin, however, by recalling some of the familiar and settled principles that inform our consideration of the meaning of a statute. "A statute draws its meaning from its text," City of Marietta v. Summerour, 302 Ga. 645, 649 (2) (807 SE2d 324) (2017) (citation and punctuation omitted), and as we read the text, "we must presume that the General Assembly meant what it said and said what it meant." Deal v. Coleman, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation and punctuation omitted). To this end, "we must view the statutory text in the context in which it appears," id., and "[f]or context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." Zaldivar v. Prickett, 297 Ga. 589, 591 (1) (774 SE2d 688) (2015)

6

(citation and punctuation omitted). In the light of the relevant context, "we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." Deal, 294 Ga. at 172-173 (1) (a). And when we are confronted with a statute having several parts, we must endeavor to harmonize those parts so as to "give a sensible and intelligent effect to each part." Premier Health Care Investments v. UHS of Anchor, ___ Ga. ___, ___ (3) (c) (849 SE2d 441) (2020) (citation and punctuation omitted). With these principles in mind, we turn now to the text and context of OCGA § 40-13-30.

Article 2 of Chapter 13 of Title 40, of which OCGA § 40-13-30 is a part, concerns the prosecution of misdemeanor traffic offenses in probate and municipal courts. Pertinent to this case, which arose from an incident at a gas station within the municipal limits of LaFayette, OCGA § 40-13-29 provides that "the judge of the municipal court in each municipal corporation shall have exclusive jurisdiction of traffic misdemeanor cases originating inside the corporate limits of municipalities." And OCGA § 40-13-24 provides

that a prosecution of a misdemeanor traffic offense in a municipal court does not require an indictment or accusation, and such a prosecution instead may be commenced by a citation and complaint. To that end, OCGA § 40-13-30 provides:

> Officers of the Georgia State Patrol and any other officer of this state or of any county or municipality thereof having authority to arrest for a criminal offense of the grade of misdemeanor shall have authority to prefer charges and bring offenders to trial under this article, provided that officers of an incorporated municipality shall have no power to make arrests beyond the corporate limits of such municipality unless such jurisdiction is given by local or other law.

Examining the statutory text, we discern three distinct parts of the statute.

The first part identifies the officers to whom the statute applies, namely, officers of the State Patrol, as well as other state officers, county officers, and municipal officers "having authority to arrest for a criminal offense of the grade of misdemeanor[.]" The second part confers upon these officers the "authority to prefer charges and bring offenders to trial under [Article 2 of Chapter 13 of Title 40]," a grant of authority that necessarily implies the power to

enforce the Rules of the Road by the issuance of a citation for a misdemeanor violation of the rules, see OCGA § 40-13-24,[5] as well as the concomitant power to effectuate an arrest by citation.[6] And the third part of OCGA § 40-13-30 appears to be a limitation of the

---

[5] We understand the phrase "prefer charges" to refer generally to the initiation of proceedings before an adjudicatory body. See OCGA §§ 12-6-62 (d) (State Board of Registration of Foresters empowered to "prefer charges" for fraud, forgery, or license violations); 43-15-25 (a) (individual may "prefer charges" for fraud and the like and present them to Board of Professional Engineers and Land Surveyors); 38-2-1030 (b) (regarding presentation of charges under Code of Military Justice). See also Armstrong Cork Co. v. Joiner, 221 Ga. 789, 790 (147 SE2d 317) (1966) (referencing labor union's threat to "prefer charges" against employees who crossed picket lines) (punctuation omitted); Hayes v. City of Dalton, 209 Ga. 286, 288 (71 SE2d 618) (1952) (referencing police commission's notification of intent to "prefer charges" against police chief and hold a hearing); State v. Byrd, 197 Ga. App. 661, 662-663 (399 SE2d 267) (1990) (noting various means by which a grand jury may "prefer charges," including "upon the endorsement of the prosecutor or the charge of the judge of the court or on its own motion"), overruled on other grounds, State v. Grace, 263 Ga. 220, 221 (430 SE2d 583) (1993). As provided in OCGA § 40-13-24, the issuance of a citation and complaint is the mechanism for the initiation of a prosecution for a misdemeanor traffic violation under Article 2 of Chapter 13 of Title 40.

[6] In some contexts, the term "arrest" connotes a custodial arrest. But in other contexts, "arrest" includes the temporary seizure of a person for purposes of issuing a citation. See, e.g., OCGA §§ 17-4-23 (a) (1) (authorizing law enforcement officers to "arrest a person accused of violating any law or ordinance enacted by local law governing the operation, licensing, registration, maintenance, or inspection of motor vehicles . . . by the issuance of a citation"); 40-13-53 (providing that "any officer who arrests any person for the violation of a traffic law or traffic ordinance alleged to have been committed outside the corporate limits of any municipality shall permit such person to be released upon being served with a citation and complaint and agreeing to appear, as provided in [Article 3 of Chapter 13 of Title 40]").

9

second with respect to municipal officers, providing that they "shall have no power to make arrests beyond the corporate limits of [their respective] municipalit[ies] unless such jurisdiction is given by local or other law."

We readily conclude that a DNR game warden is among the officers identified in the first part of OCGA § 40-13-30. Thornton does not dispute that a game warden is an "officer of this state . . . having authority to arrest for a criminal offense of the grade of misdemeanor[,]" and he is right not to dispute it. DNR is a department of the state government, and inasmuch as they are classified as "a unit of peace officers" within DNR, see OCGA § 27-1-16 (a), game wardens undoubtedly are "officer[s] of this state" for purposes of OCGA § 40-13-30. Moreover, game wardens are specifically and expressly authorized to make arrests for violations "of the laws, rules, and regulations pertaining to wildlife or to hunting, fishing, or boating[,]" OCGA § 27-1-20 (a) (4), violations that most commonly are misdemeanors. See OCGA § 27-1-38 (generally classifying violations of Game and Fish Code as

misdemeanor offenses). In addition, game wardens are expressly authorized "[t]o enforce all state laws on property owned or controlled by [DNR,]" OCGA § 27-1-18 (a) (1); "[t]o enforce any state law when the violation of that law is committed in conjunction with a violation of a state law pertaining to functions assigned to [DNR,]" OCGA § 27-1-18 (a) (3); "[t]o enforce any state law when ordered to do so by the Governor or to protect any life or property when the circumstances demand action[,]" OCGA § 27-1-18 (a) (4); upon the direction of the Commissioner of Natural Resources, and at the request of the Governor or certain judicial or law enforcement officers, "to cooperate with and render assistance to any law enforcement agency . . . in any criminal case, in the prevention or detection of violations of any law, or in the apprehension or arrest of persons who violate the criminal laws of this state," OCGA § 27-1-18 (b); and "[t]o exercise the full authority of peace officers while in the performance of their duties[,]" OCGA § 27-1-20 (a) (10). We do not hesitate to conclude that DNR game wardens are among the officers identified in the first part of OCGA § 40-13-30.

11

As such, the game warden in this case was authorized under the second part of OCGA § 40-13-30 to enforce the Rules of the Road, including the provision of OCGA § 40-6-14 (a) limiting the sound emitted by a car stereo, with respect to a misdemeanor violation of the rules subject to the procedures of Article 2 of Chapter 13 of Title 40. This power to enforce the Rules of the Road not only includes the power to issue a citation for a misdemeanor violation, but it necessarily must also include the power to effectuate an arrest for the purpose of issuing and serving the citation, as well as the authority to direct the offender to cease the conduct that constitutes the violation (by telling a driver, for instance, to turn down the volume of his car stereo) and to reasonably control the person of the offender during the arrest (by telling a driver, for instance, to remain outside his car or to stop his vehicle). Moreover, to the extent that a game warden is authorized to enforce the Rules of the Road — as was the game warden in this case — we readily conclude that he also is authorized to arrest any person who attempts to obstruct his enforcement of those rules. See OCGA § 27-1-20 (a) (10) (game

warden has power "[t]o exercise the full authority of peace officers while in the performance of [his] duties").

And the territorial limitation expressed in the third part of OCGA § 40-13-30 — which by its own terms is limited to municipal officers — does not apply to a DNR game warden. Aside from this express limitation, however, Thornton argues that OCGA § 40-13-30 should not otherwise be understood to supersede the legal limits of the authority of law enforcement agencies with limited jurisdiction, whether those limits are territorial or defined in terms of subject matter. This argument is plausible, see Zilke v. State, 299 Ga. 232 (787 SE2d 745) (2016),[7] but to resolve this case, we need not decide whether it is meritorious. Although some of the powers conferred by statute upon DNR game wardens are territorially limited, see, e.g., OCGA § 27-1-18 (power "[t]o enforce all state laws

---

[7] In Zilke, this Court held that another statute generally authorizing law enforcement officers to make arrests for traffic offenses committed in their presence, OCGA § 17-4-23 (a), did not authorize a law enforcement officer "to make a custodial arrest outside the jurisdiction of the law enforcement agency by which he is employed." 299 Ga. at 235. We do not decide today whether the reasoning of Zilke would apply to OCGA § 40-13-30.

13

on all property owned or controlled by [DNR]"), and some of those powers are limited in terms of subject matter, see, e.g., OCGA § 27-1-20 (a) (1) (power "[t]o enforce all laws, rules, and regulations pertaining to wildlife and to boating safety"), game wardens also are authorized by statute to exercise general law enforcement powers without respect to territory or subject matter in a wide variety of circumstances. See, e.g., OCGA §§ 27-1-18 (a) (4) (authority "[t]o enforce any state law when ordered to do so by the Governor or to protect any life or property when the circumstances demand action"); 27-1-18 (b) (authority in some circumstances "to cooperate with and render assistance to any law enforcement agency . . . in any criminal case, in the prevention or detection of violations of any law, or in the apprehension or arrest of persons who violate the criminal laws of this state"); 27-1-20 (a) (10) (power "[t]o exercise the full authority of peace officers while in the performance of their duties"). In light of the breadth of the general law enforcement authority conferred by statute upon DNR game wardens, understanding OCGA § 40-13-30 to authorize game wardens to enforce the Rules of

the Road under Article 2 of Chapter 13 of Title 40 would neither drastically expand the jurisdiction of DNR nor be inconsistent with any express statutory limitation on the authority of game wardens. Cf. Zilke, 299 Ga. at 233 (noting that arrest authority of campus police officers is limited by statute to campus and locations within 500 yards of campus, and holding that general authorization of law enforcement officers to arrest for traffic citations under OCGA § 17-4-23 did not supersede that specific limitation on the power of campus police officers).

3. We next consider the extent to which the Rules of the Road apply to the operation of vehicles in parking lots. Even though the game warden in this case was authorized to enforce the Rules of the Road pursuant to Article 2 of Chapter 13 of Title 40, if the Rules of the Road did not apply in the parking lot in which the game warden encountered Thornton, his attempts to enforce OCGA § 40-6-14 against Thornton would not have been in the lawful discharge of his official duties for purposes of an obstruction conviction. In general,

15

OCGA § 40-6-3 (a) provides that "[t]he provisions of this chapter[8] relating to the operation of vehicles refer to the operation of vehicles upon highways[,]" and for the purposes of Title 40, a "highway" is defined as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." OCGA § 40-1-1 (19). In addition, OCGA § 40-6-3 (a) (2) provides that the Rules of the Road also apply to "a vehicle operated at shopping centers or parking lots or similar areas which although privately owned are customarily used by the public as through streets or connector streets[.]" According to the State, OCGA § 40-6-3 (a) (2) means that the Rules of the Road apply in *all* "shopping centers [and] parking lots" — including, for instance, the parking lot of the gas station in this case — as well as in privately-owned "similar areas which . . . are customarily used by the public as through streets or connector streets." Thornton, on the other hand, contends that OCGA § 40-6-3

---

[8] "[T]his chapter" refers to Chapter 6 of Title 40, the Rules of the Road. See note 2 supra.

16

(a) (2) applies the Rules of the Road to the locations identified in the statute — "shopping centers or parking lots or similar areas" — only to the extent that those locations are customarily used by the public as through or connector streets.

The basic dispute thus centers on whether the qualifying phrase ("which although privately owned are customarily used by the public as through streets or connector streets") is intended to modify only the term that immediately precedes it ("similar areas") or the entire series of terms that precede it ("shopping centers or parking lots or similar areas").

> Under the canon of statutory construction known as the "rule of the last antecedent," a qualifying phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows. However, this rule is not absolute, and the inference it raises may be rebutted where the structure and internal logic of the statutory scheme so militate. Under the alternative "series-qualifier principle," a qualifying phrase appearing at the end of a series should be read to apply to all items in the series when such an application would represent a natural construction.

Scott v. State, 299 Ga. 568, 572-573 (1) (788 SE2d 468) (2016) (citations and punctuation omitted). In choosing among the different

understandings of the statute proposed by the parties, we must assess the qualifying phrase by reference to "its situation within and relationship to the entire statutory text." Id. at 573 (2).

Examining the text, structure, and context of OCGA § 40-6-3 (a) (2), we conclude that Thornton is right, and the qualifying phrase is most naturally and reasonably understood to modify all of the terms in the series that precedes it. By its use of the adjective "similar" to modify the "areas," OCGA § 40-6-3 (a) (2) suggests that "shopping centers [and] parking lots" are linked to other "similar areas" to form a singular, cohesive set of locations, and this cohesive set is then qualified by reference to the customary usage of these locations by the public. Understanding OCGA § 40-6-3 (a) (2) in this way also fits naturally with the provision of OCGA § 40-6-3 (a) that the Rules of the Road apply generally to highways. Indeed, the general provision of OCGA § 40-6-3 (a) with respect to highways effectively extends the Rules of the Road to "every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel[,]" and construed most reasonably,

18

OCGA § 40-6-3 (a) (2) is understood to extend the same Rules of the Road to privately owned property — whether a "shopping center," a "parking lot," or another "similar area" — that likewise is customarily used by the public as a "through street" or a "connector street," that is, used as if it were a public way.[9]

This understanding also finds support in other paragraphs of subsection 40-6-3 (a). Paragraph (a) (3), for instance, extends the Rules of the Road regarding reckless driving, driving under the influence of alcohol or drugs, and homicide by vehicle "to vehicles operated upon highways *and elsewhere throughout the state*[.]" (Emphasis supplied.) Paragraph (a) (4) provides that certain provisions of the Rules of the Road regarding a driver's duties after an accident "shall apply upon the highways of this state, *in all parking areas*, and in all areas which are customarily open to the

---

[9] The alternative understanding of OCGA § 40-6-3 (a) (2) proposed by the State would mean that, for instance, the Rules of the Road would apply in a private, gated parking lot that is inaccessible to the public, but the Rules of the Road typically would not apply to a private, ungated driveway (a "similar area") leading to that parking lot, which (because it leads to an inaccessible, gated parking lot) likely would not be customarily used by the public as a through street or connector street.

public and within 200 feet [thereof]." (Emphasis supplied.) Similarly broad language was not used in OCGA § 40-6-3 (a) (2) to make clear that *all* shopping centers and *all* parking lots are covered by the Rules of the Road, and this omission suggests that paragraph (a) (2) has a narrower scope. In addition, the phrase "all parking lots" in paragraph (a) (4) would be entirely superfluous if paragraph (a) (2) separately makes all of the Rules of the Road applicable in all parking lots. See <u>Kennedy v. Carlton</u>, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014) (courts should "avoid[ ] a statutory construction that will render some of the statutory language mere surplusage"). In sum, reading OCGA § 40-6-3 (a) (2) in the context of the other paragraphs of subsection 40-6-3 (a) reinforces the conclusion that paragraph (a) (2) is most reasonably understood to extend the Rules of the Road only to those privately owned shopping centers, parking lots, and similar areas that are customarily used by the public as through or connector streets. To the extent the Court of Appeals has previously held the Rules of the Road applicable in a parking lot without regard to its customary use as a through or connector street, those cases are

disapproved. See, e.g., <u>Canino v. State</u>, 314 Ga. App. 633, 636 (1) n.10 (725 SE2d 782) (2012); <u>Jackson v. State</u>, 297 Ga. App. 615, 617 (677 SE2d 782) (2009); <u>Patton v. State</u>, 287 Ga. App. 18, 20-21 (650 SE2d 733) (2007); <u>Miller v. State</u>, 221 Ga. App. 494, 495 (471 SE2d 565) (1996).

Although Thornton is correct that the Rules of the Road apply to the operation of vehicles in a privately owned parking lot only to the extent that the parking lot is customarily used by the public as a through street or connector street, we conclude that the evidence in this case nevertheless is sufficient to prove beyond a reasonable doubt that the game warden was in the lawful discharge of his official duties when he attempted to enforce the statutory limitation of sound emitted from a motor vehicle against Thornton in the gas station parking lot. At trial, the evidence established that the gas station was situated at the intersection of two public roads, and the game warden was asked whether the parking lot was "[c]ommonly used as a cut through or a way to get from one road to the other?" The game warden answered: "Yes, sir, I have seen people do that

21

before." This testimony was sufficient to authorize the jury to find that the parking lot outside the gas station was a parking lot that, although privately owned, was customarily used by the public as a through street or connector street. As such, the jury properly could have found that the game warden was in the lawful discharge of his official duties when he attempted to enforce OCGA § 40-6-14 against Thornton in the parking lot.

4. For these reasons, the evidence presented at trial was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Thornton was guilty of obstruction, and the judgment of the Court of Appeals is, therefore, affirmed.

Judgment affirmed. All the Justices concur, except Warren, J., not participating.

Decided November 16, 2020.

Certiorari to the Court of Appeals of Georgia — 353 Ga. App. 252.

*Jad B. Johnson, David J. Dunn, Jr., Victor P. Aloisio III*, for appellant.

*Christopher A. Arnt, District Attorney, Megan S. Dietz. Assistant District Attorney*, for appellee.

*Christopher M. Carr, Attorney General, Ross W. Bergethon, Deputy Solicitor-General*, amici curiae.