317 Ga. 356
FINAL COPY

S23Q0625. FORD MOTOR COMPANY v. COSPER.

COLVIN, Justice.

Although product-liability claims are generally subject to a ten-year statute of repose in Georgia, see OCGA § 51-1-11 (b) (2), the statute of repose does not apply to negligence claims "arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property," OCGA § 51-1-11 (c). The United States District Court for the Northern District of Georgia has certified to this Court two questions regarding OCGA § 51-1-11 (c). The federal district court asks (1) whether, under OCGA § 51-1-11 (c), "reckless" conduct is a standalone exception to OCGA § 51-1-11 (b) (2)'s ten-year statute of repose; and (2) if so, how "reckless" conduct is defined.

As explained below, we answer the first question in the affirmative: under OCGA § 51-1-11 (c), reckless disregard for life or property is a standalone exception to OCGA § 51-1-11 (b) (2)'s ten-year statute of repose. Thus, OCGA § 51-1-11 (b) (2)'s statute of

repose does not apply to a product-liability claim sounding in negligence that "aris[es] out of conduct which manifests . . . reckless . . . disregard for life or property." OCGA § 51-1-11 (c).

As further explained below, the answer to the second question is that "reckless . . . disregard for life or property," under OCGA § 51-1-11 (c), carries a meaning that closely resembles the Restatement (First) of Torts' definition of "Reckless Disregard of Safety." Specifically, an actor's "conduct . . . manifests a . . . reckless . . . disregard for life or property," under OCGA § 51-1-11 (c), if the actor

> intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of [harm to another's life or property] but also involves a high degree of probability that substantial harm will result to [the other's life or property].

Restatement (First) of Torts § 500 (1934) (defining "Reckless Disregard of Safety").

1.    In its certification order, the federal district court recounted the factual and procedural history of this case as follows:

> This case arises out of a rollover accident ("the

2

Accident") that occurred on December 25, 2015[,] in Haralson County. During the Accident, the roof structure (passenger side) in the crash-involved Ford Explorer intruded into the occupant compartment. Cindy Pollard was the driver of the Explorer. Ronnie Ammerson was the front seat passenger. Mr. Ammerson suffered severe cervical spinal (C6/C7) fractures with spinal cord trauma. After months of rehabilitation, he was discharged to his home where he succumbed to his injuries by pneumonia. An autopsy concluded that the cause of death was acute right lung pneumonia resulting from the cervical spine trauma/quadriplegia sustained in the Accident.

Plaintiffs filed their original Complaint on May 6, 2018[,] and their First Amended Complaint on January 7, 2020.[1] In Count I, Plaintiffs asserted three strict liability claims — design defect, manufacturing defect, and failure to warn. In Count II, Plaintiffs asserted four negligence claims — negligent design, negligent manufacture, negligent sale, and negligent failure to recall. Plaintiffs also sought attorneys' fees, general damages, special damages, punitive damages, and recovery for wrongful death.

Ford filed a Motion for Summary Judgment on March 15, 2022, arguing that all of Plaintiff[s'] claims failed as a matter of law. Most relevant here, Ford asserted that Georgia's statute of repose barred Plaintiffs' negligent design claims because Ford did not act willfully or wantonly as a matter of law. In response, Plaintiffs argued that the statute of repose did not bar their negligent design claims because a jury could find that Ford acted *recklessly*, willfully, or wantonly. Plaintiffs conceded all other substantive claims. Ford replied on

---

[1] The record indicates that the lawsuit was filed by plaintiffs Cindy Cosper (formerly Cindy Pollard) "as surviving child of Ronnie Ammerson," and Allan Myers "as Temporary Administrator of the Estate of Ronnie Ammerson."

May 6, 2022[,] and argued that: (1) recklessness is not an independent exception to the statute of repose; and (2) Plaintiffs failed to put forth enough evidence to support a jury finding that Ford acted willfully or wantonly.

In ruling on Ford's motion, the [federal district court] held that Georgia's statute of repose did not bar Plaintiffs' negligent design claims because a jury could find that Ford's actions were at least reckless.[2] To reach this finding, the [district court] applied the *Chrysler Grp., LLC v. Walden*[, 339 Ga. App. 733 (792 SE2d 754) (2016)] court's interpretation of [OCGA] § 51-1-11 (c), the statute governing exceptions to the statute of repose. The [district court] applied *Walden*, a Georgia Court of Appeals case, because it found that the Supreme Court of Georgia had not addressed whether "recklessness" was an independent exception to Georgia's statute of repose. The [district court] also upheld Plaintiffs' request for punitive damages based on the roof negligent design claim and Plaintiffs' request for attorneys' fees. Finally, the Court dismissed all of Plaintiffs' other substantive claims.

(Citations omitted; emphasis in original.)

Ford filed a Motion to Certify Ruling for Interlocutory Appellate Review, but the federal district court concluded that the

---

[2] The federal district court noted:
The [federal district court] found that Plaintiffs' evidence could support a finding that Ford acted recklessly, willfully, or wantonly when designing the subject Explorer's roof. With respect to Plaintiffs' other negligent design claims (stability and restraint), the [district court] found that Ford acted recklessly *at most*.
(Citations omitted; emphasis in original.)

Eleventh Circuit would likely need to seek clarity from this Court to resolve Ford's appeal. Accordingly, the court denied Ford's motion and sua sponte certified to this Court the two questions of law regarding OCGA § 51-1-11 (c) that we described above.

2. Generally, product-liability claims "filed more than ten years after the date of the first sale for use or consumption of the product are completely barred" under OCGA § 51-1-11 (b) (2)'s statute of repose. *Chrysler Corp. v. Batten*, 264 Ga. 723, 725-726 (2) (450 SE2d 208) (1994) (citation and punctuation omitted). See OCGA § 51-1-11 (b) (1) (providing that a manufacturer is liable for product defects that proximately cause injury); OCGA § 51-1-11 (b) (2) ("No action shall be commenced pursuant to this subsection with respect to an injury after ten years from the date of the first sale for use or consumption of the personal property causing or otherwise bringing about the injury."). Under OCGA § 51-1-11 (c), however, the statute of repose does not apply to certain product-liability claims sounding in negligence. That provision, which was added to the statute in 1987, see Ga. L. 1987, p. 613, § 1, states in relevant part

5

that OCGA § 51-1-11 (b) (2)'s ten-year statute of repose

> shall also apply to the commencement of an action claiming negligence of a manufacturer as the basis of liability, *except an action . . . arising out of conduct which manifests a willful, reckless, or wanton disregard for life or property.*

OCGA § 51-1-11 (c) (emphasis supplied).

In *Batten*, we clarified that actions arising out of conduct that manifests either "willful . . . disregard for life or property" or "wanton disregard for life or property," OCGA § 51-1-11 (c), are exempted from OCGA § 51-1-11 (b) (2)'s statute of repose. See *Batten*, 264 Ga. at 726 (3). There, we noted that "[w]ilful conduct" is conduct involving "an actual intention to do harm or inflict injury," and "wanton conduct" is conduct that "is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent." Id. (citation and punctuation omitted). We then concluded that the plaintiff's evidence was "insufficient as a matter of law to support a finding that [the manufacturer's] conduct manifested a 'willful, reckless, or wanton disregard for life or property'" because that evidence had either "little" or "no" relevance

6

"in evaluating [the manufacturer's] culpability" in designing its product. Id. (citation omitted). *Batten*, however, did not separately define the word "reckless" as used in OCGA § 51-1-11 (c), leaving open the question of whether the statutory provision separately exempts from the statute of repose negligence actions arising from conduct that manifests "reckless . . . disregard for life or property." OCGA § 51-1-11 (c).

To answer that question, we must "examin[e] the statute's plain language," *Green v. State*, 311 Ga. 238, 242 (1) (857 SE2d 199) (2021), "view[ing] the statutory text in the context in which it appears," *Thornton v. State*, 310 Ga. 460, 462 (2) (851 SE2d 564) (2020) (citation and punctuation omitted), "presuming that the General Assembly meant what it said and said what it meant," *Star Residential v. Hernandez,* 311 Ga. 784, 785 (1) (860 SE2d 726) (2021) (citation and punctuation omitted), and "read[ing] the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would," *Thornton*, 310 Ga. at 463 (2) (citation and punctuation omitted). "[F]or context, we may look to other

provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." *Thornton*, 310 Ga. at 462-463 (2) (citation and punctuation omitted).

We begin our construction of OCGA § 51-1-11 (c) by observing that the word "or" is generally used in a disjunctive sense to signal alternatives. See *Rockdale County v. U.S. Enterprises*, 312 Ga. 752, 765-766 (3) (b) (865 SE2d 135) (2021) (noting that the word "'or' is naturally understood as a disjunctive term that marks an alternative" (citation and punctuation omitted)). See also *Gearinger v. Lee*, 266 Ga. 167, 169 (2) (465 SE2d 440) (1996) (noting that, although the word "or" can sometimes be interpreted as a "reiterative term," it usually operates as a "disjunctive term"). Accordingly, if "or" is understood in its usual disjunctive sense, then OCGA § 51-1-11 (c)'s phrase "arising out of conduct which manifests a *willful, reckless, or wanton* disregard for life or property" identifies three independent types of conduct that could exempt a claim from

the statute of repose: (1) "willful . . . disregard for life or property," (2) "reckless . . . disregard for life or property," and (3) "wanton disregard for life or property." OCGA § 51-1-11 (c) (emphasis supplied).

Ford argues that the "or" in the three-word phrase "willful, reckless, or wanton" is not used in its ordinary, disjunctive sense because that phrase is a "term of art" that "encompass[es] one mindset, not three." To support this proposition, Ford raises two primary arguments, neither of which is persuasive. First, Ford argues that *Batten* construed the phrase "willful, reckless, or wanton" as "describ[ing] an entire mindset." As explained above, however, this Court in *Batten* provided separate definitions for "[w]ilful conduct" and "wanton conduct." *Batten*, 264 Ga. at 726 (3). We did not purport to provide a singular definition for the entire phrase. Nor did we state that the terms "willful," "reckless," and "wanton" have the same meaning. Although *Batten* did not separately define the word "reckless" in OCGA § 51-1-11 (c), *Batten*'s conclusion that two of the three terms in that phrase have distinct

9

meanings is in tension with Ford's contention that OCGA § 51-1-11 (c) uses the three-word phrase as a term of art that describes a singular "mindset" or a singular type of "conduct."

Second, Ford contends that OCGA § 51-1-11 (c)'s phrase "willful, reckless, or wanton" is a term of art because legal scholars have said that the terms "willful," "reckless," and "wanton" are related, and Georgia cases and statutes frequently list the three terms together. As explained below, however, the authorities on which Ford relies do not show that Georgia law leading up to OCGA § 51-1-11 (c)'s enactment treated the three-word phrase as a term of art carrying a meaning that was distinct from the meaning of each constituent term.

As Ford points out, Prosser and Keeton on Torts explains that "the words 'willful,' 'wanton,' or 'reckless'" have often "been grouped together" as forms of "quasi-intent," which "[lie] between intent to do harm . . . [and] ordinary negligence" and "apply to conduct which is still, at essence, negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is

treated in many respects as if it were so intended." Prosser and Keeton on Torts 212-213 (W. Page Keeton ed., 5th ed. 1984) (punctuation and footnotes omitted). In particular, Ford highlights the treatise's observation that "the three terms ['willful,' 'wanton,' or 'reckless'] *have been treated as meaning the same thing*, or at least as coming out at the same legal exit." Id. at 212 (emphasis supplied).

But Ford has not shown that this general description of the words "willful," "wanton," and "reckless" tracks their use in Georgia law. A review of Georgia civil cases leading up to the enactment of OCGA § 51-1-11 (c) in 1987 reveals that this Court and the Georgia Court of Appeals often used the terms "willful," "wanton," and "reckless" together when describing conduct that was more culpable than negligence and that was likely to cause harm. See, e.g., *Aetna Life Ins. Co. v. Carroll,* 169 Ga. 333, 342 (150 SE 208) (1929) ("Wilful misconduct is much more than mere negligence, or even than gross negligence. It involves conduct of a quasi-criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless

11

disregard of its probable consequences."); *Truelove v. Wilson*, 159 Ga. App. 906, 908 (4) (285 SE2d 556) (1981) ("Wilful and wanton conduct . . . is conduct such as to evidence a wilful intention to inflict the injury, or else was so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent. . . . There is an element of intent, actual or imputed, in 'wilful and wanton conduct' which removes such conduct from the range of conduct which may be termed negligent." (citation, punctuation and emphasis omitted)); *Blanchard v. Westview Cemetery*, 124 Ga. App. 195, 211 (5) (183 SE2d 399) (1971) (Evans, J., dissenting) (noting that, "in a suit for wrongfully disinterring a dead body, . . . if the injury has been wanton and malicious or the result of gross negligence or a reckless disregard of the rights of others, equivalent to an intentional violation of them, exemplary damages may be awarded"), adopted as the decision of the Court by *Blanchard v. Westview Cemetery*, 228 Ga. 461 (186 SE2d 92) (1971); *Central of Ga. R. Co. v. Pelfry*, 11 Ga. App. 119, 123 (74 SE 854) (1912) ("While the rule is well settled that

12

in case of the death of a trespasser, recovery can be had only where the homicide was the result of wanton or wilful conduct on the part of the servants of the defendant, it is a mistake to assume that the homicide must be shown to have been intentional in point of fact; for if the conduct of the defendant's servants was so reckless as to evidence an utter disregard of consequences, the law would imply willfulness and an intention to do the wrong.").

Some Georgia cases grouped "willful," "wanton," and "reckless" conduct together under the generic label of "willful and wanton" conduct, but even those cases appeared to draw conceptual distinctions between some or all of these terms. See *Truelove*, 159 Ga. App. at 908 (4) (discussing different uses of the phrase "wilful and wanton"). For example, in *Carr v. John J. Woodside Storage Co.*, 217 Ga. 438 (123 SE2d 261) (1961), we described "willful" conduct and "wanton" conduct in terms that track *Batten*'s definitions. Compare *Carr*, 217 Ga. at 444 (1) (holding that the trial evidence could support a finding that a driver's "conduct was such as to evince a wilful intention to inflict the injury which caused [the

decedent's] death, or else was so reckless or so charged with indifference to the consequences, where human life was involved, as to justify the jury to find a wantonness equivalent in spirit to actual intent"), with *Batten*, 264 Ga. at 726 (3) (defining "[w]ilful conduct" as conduct involving "an actual intention to do harm or inflict injury" and "wanton conduct" as conduct that "is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent" (citation and punctuation omitted)). See also *Lumley v. Pollard*, 61 Ga. App. 681, 694 (2) (7 SE2d 308) (1940) (Allegations that a train engineer had "constructive knowledge" of a dead body on the tracks were insufficient to "sustain the conclusion that the engineer's acts were wilful and wanton. Nor do any facts alleged show such a reckless disregard of the rights of others as to amount to wilfulness and wantonness.").

In sum, pre-1987 Georgia civil cases reveal that the words "willful," "reckless," and "wanton" were often used together when describing related forms of conduct, all of which were more culpable than negligence and were likely to cause harm. However, we have

not identified any pre-1987 Georgia civil case providing a unified definition for the three-word phrase "willful, reckless, or wanton" or a variation thereof.[3]

Moreover, the historical context of OCGA § 51-1-11 (c)'s

---

[3] Citing several cases, Ford argues that "[t]he sequenced listing or use of the terms 'willful,' 'wanton,' and 'reckless' is found throughout more than a century of Georgia jurisprudence." See *Hale v. Hale*, 199 Ga. 150, 154 (2) (33 SE2d 441) (1945) ("[I]t is . . . well established that for a wanton and wilful tort or for a reckless disregard of the rights of others, equivalent to an intentional tort by the defendant, the injured party may recover for the mental pain and anguish suffered therefrom." (citation and punctuation omitted)); *Southern R. Co. v. Chatman*, 124 Ga. 1026, 1036 (2) (53 SE 692) (1906) ("An owner of property is not ordinarily required to anticipate that trespassers will come upon it, and to prepare his property for them, or guard against possible injury to them. Hence arises the general statement of the rule as to liability only for wanton, wilful, or reckless injury, looking at the trespasser as such solely, and without reference to the existence of any relation creating a duty. The duty not to wilfully or recklessly injure another may be said to be due from all men to all men."); *Central R. and Banking Co. v. Denson*, 84 Ga. 774, 777 (11 SE 1039) (1890) ("[C]ontributory negligence cannot be relied upon in . . . any case where the action of the defendant is wanton, wilful or reckless in the premises, and injury ensues as the result." (citation and punctuation omitted)). Ford also cites another statute in which the General Assembly has used all three words. See OCGA § 16-2-1 (b) ("Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."). In addition, Ford cites Black's Law Dictionary to argue that, because "willful and wanton acts [are defined] as reckless or done in reckless disregard," the three terms "are descriptive of each other." But these authorities do not state that the words "willful," "reckless," and "wanton" have the same meaning or indicate that the three-word phrase "willful, reckless, or wanton" has an established meaning as a term of art. At most, these authorities show that the three terms refer to related concepts, as we have acknowledged above.

enactment reveals that the General Assembly was aware that, at least in some circumstances, the terms "willful," "reckless," and "wanton" could invoke distinct concepts. See *Thornton*, 310 Ga. at 462-463 (2) (noting that "we may look to . . . [the] history of the whole statute" for context when interpreting a statute (citation and punctuation omitted)). Specifically, OCGA § 51-1-11 (c) was enacted at the same time as Georgia's punitive-damages statute, OCGA § 51-12-5.1 (b). See Ga. L. 1987, pp. 613, 917-918, §§ 1, 5. But although OCGA § 51-1-11 (c) refers to "willful, reckless, or wanton" conduct, OCGA § 51-12-5.1 (b) permits punitive damages for "willful misconduct" and "wantonness" without expressly mentioning "reckless" conduct. OCGA § 51-12-5.1 (b) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed *willful misconduct*, malice, fraud, *wantonness*, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." (emphasis supplied)). The fact that the General Assembly delineated all three terms in OCGA § 51-1-11

16

(c) but expressly included only two of them in OCGA § 51-12-5.1 (b) further supports the conclusion that the "or" in OCGA § 51-1-11 (c)'s phrase "willful, reckless, or wanton" serves its usual function of setting off a list of alternatives.

For all the reasons stated above, we conclude that the "or" in OCGA § 51-1-11 (c) should be understood in its ordinary, disjunctive sense, and thus that "reckless . . . disregard for life or property" is a standalone exception to the statute of repose, so long as the word "reckless" is susceptible of an independent meaning. See *Rockdale County*, 312 Ga. at 766 (3) (b). That brings us to the second certified question.

3.    The second certified question asks us to define "reckless . . . disregard for life or property," as used in OCGA § 51-1-11 (c). We acknowledge at the outset that the word "reckless" can bear different meanings in different contexts. See *McIver v. State*, 314 Ga. 109, 126 (2) (d) (875 SE2d 810) (2022) (noting that "the term 'reckless' has been somewhat elastic and has had different meanings in different contexts"). See also Black's Law Dictionary 1270 (6th ed. 1990)

17

(defining "[r]eckless" as "[n]ot recking; careless, heedless, inattentive; indifferent to consequences," but noting that, "*[a]ccording to circumstances* ['reckless'] may mean desperately heedless, wanton or willful, or it may mean only careless, inattentive, or negligent" (emphasis supplied)). Further, as explained below, when OCGA § 51-1-11 (c) was enacted, Georgia law did not clearly define "reckless," as that term was used in civil cases. Nevertheless, interpreting OCGA § 51-1-11 (c) in its historical context and with reference to the canons of construction, we conclude below that the phrase "reckless . . . disregard for life or property" in the statute bears a meaning that closely resembles the Restatement (First) of Torts' definition of the phrase "Reckless Disregard of Safety."

(a)    The parties each contend that the word "reckless" had a settled meaning in Georgia when OCGA § 51-1-11 (c) was enacted, but their arguments are unpersuasive. As explained below, the authorities on which they rely do not establish a clear definition of the term for purposes of civil cases.

18

(i)     Ford argues that the word "reckless" in OCGA § 51-1-11 (c) is synonymous with the definition of the crime of "Reckless Conduct," which, at the time OCGA § 51-1-11 (c) was enacted, provided:

> A person commits a misdemeanor when he causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause the harm or endanger the safety, and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

Ga. L. 1968, pp. 1325-1326.[4] According to Ford, "reckless" in OCGA § 51-1-11 (c) must be understood to carry the same meaning as the crime of "reckless conduct" because "[t]he General Assembly has provided but one definition" of "reckless conduct," and that definition appears in its definition of the crime. We disagree.

---

[4] The current statute criminalizing reckless conduct includes similar language. See OCGA § 16-5-60 (b) ("A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.").

19

Although there is an "elementary rule of statutory construction that statutes relating to the same subject matter are 'in pari materia'" and generally should be "construed together and harmonized," *In the Interest of T. B.*, 313 Ga. 846, 853 (3) (874 SE2d 101) (2022) (citation and punctuation omitted), the product-liability statute and the statute defining the crime of reckless conduct are not related to the same subject matter. The former statute is civil in nature whereas the latter statute is criminal, and Ford has not provided any authority suggesting that the definition of a crime should be imported into the civil product-liability statute.

Further, the text of the two statutes does not indicate that OCGA § 51-1-11 (c) incorporates the criminal definition of "Reckless Conduct." This is because the criminal statute defines the crime of "Reckless Conduct," Ga. L. 1968, pp. 1325-1326, and does not use or define "reckless" as a standalone term, see *McIver*, 314 Ga. at 126 (2) (d) (noting that "the word 'reckless' itself is not included in the statutory definition of the offense denominated as 'reckless conduct'"). Given that OCGA § 51-1-11 (c) uses the phrase "conduct

which manifests a . . . reckless . . . disregard for life or property," rather than the phrase "reckless conduct," there is no straightforward way to import the definition of "reckless conduct" into OCGA § 51-1-11 (c).

Moreover, we have previously declined to use the criminal definition of "reckless conduct" when interpreting a similar phrase in the "criminal negligence" statute, which criminalizes "an act . . . which demonstrates a . . . reckless disregard for the safety of others who might reasonably be expected to be injured thereby." *McIver*, 314 Ga. at 126-127 (2) (d) (quoting OCGA § 16-2-1) ("The distinction between ['criminal negligence' and 'reckless conduct'] is found in the statutory requirements in OCGA § 16-5-60 (b) that the person 'consciously disregard a substantial and unjustifiable risk' that is a 'gross deviation' from a reasonable standard of care." (citation and punctuation omitted)). See also *Major v. State*, 301 Ga. 147, 150 (1) (800 SE2d 348) (2017) (not relying on the definition of the crime of "reckless conduct" when interpreting the word "reckless" in the terroristic-threats statute, which provides that a person commits an

21

offense if he "threatens to commit any crime of violence, to release any hazardous substance, . . . or to burn or damage property . . . in reckless disregard of the risk of causing such terror or inconvenience" (citation and punctuation omitted)). Thus, the definition of the crime of "reckless conduct" does not always serve as the definition of the term "reckless" even within the criminal context.

(ii) Cosper, by contrast, argues that *Arrington v. Trammell*, 83 Ga. App. 107 (62 SE2d 451) (1950), which quoted from the Restatement (First) of Torts' definition of "Reckless Disregard of Safety," see *Arrington*, 83 Ga. App. at 111, established the meaning of "reckless" for Georgia civil cases prior to OCGA § 51-1-11 (c)'s enactment. But *Arrington* discussed "reckless" conduct only in the context of defining "wanton" conduct, and the case expressly conflated the two terms. See *Arrington*, 83 Ga. App. at 110-112 (deciding "whether there was any evidence to authorize a finding by the jury that the conduct of the defendant amounted to *wantonness*," which was "the *sole* issue" on appeal, and defining the phrase

"reckless (wanton) misconduct" (emphasis supplied)). Thus, although we conclude below that the Restatement (First) of Torts' definition of "Reckless Disregard of Safety" closely resembles the meaning of "reckless" in OCGA § 51-1-11 (c), *Arrington* did not provide a clear definition of "reckless" as a standalone term.

(b) Although Georgia law had not clearly defined "reckless" as that term was used in civil cases prior to OCGA § 51-1-11 (c)'s enactment, our precedent leading up to the statute's enactment, together with the canons of construction, provide guidance for how to understand the word "reckless" in the statute. "Because the legislature is presumed to know the condition of the law and to enact statutes with reference to it," *Williams v. State*, 299 Ga. 632, 634 (791 SE2d 55) (2016) (citation and punctuation omitted), the legal backdrop against which a statute is enacted is often a key indicator of a statute's meaning, see *Thornton*, 310 Ga. at 462-463 (2) (noting that we consider the historical legal context in which a statute was enacted when interpreting the statute's text).

Here, as we observed in Division 2 above, Georgia precedent

23

leading up to the enactment of OCGA § 51-1-11 (c) indicates that the word "willful" was generally understood to refer to conduct involving an "intention to inflict [an] injury," whereas "wanton" was understood to refer to conduct that "was so reckless or so charged with indifference to the consequences" that it was "equivalent in spirit to actual intent." *Carr*, 217 Ga. at 444 (1).

Further, Georgia case law leading up to OCGA § 51-1-11 (c)'s enactment, considered together with the associated-words canon, suggests that the word "reckless" in the statute refers to conduct that is more culpable than negligence and that is likely to cause harm. The associated-words canon counsels that a word in a statute "should be understood in relation to the other words in the statute." *Kinslow v. State*, 311 Ga. 768, 773 (860 SE2d 444) (2021). Here, OCGA § 51-1-11 (c) includes the word "reckless" in a list with "willful" and "wanton," suggesting that the three words are related, and pre-1987 Georgia precedent makes the nature of that relationship clear. Specifically, as we explained in Division 2 above, that case law frequently used these three terms together when

24

describing conduct that was more culpable than negligence and that involved a high risk of harm.

Our historical definitions of the terms "willful" and "wanton" further suggest that the three terms — "willful," "wanton," and "reckless" — fall on a spectrum of culpable conduct, with willful conduct being the most culpable and reckless conduct being the least culpable. Specifically, as noted above, "willful" conduct has been described as involving "an actual intention to do harm or inflict injury." *Batten*, 264 Ga. at 726 (3) (citation and punctuation omitted). See *Carr*, 217 Ga. at 444 (1) (describing "willful" conduct as involving "a wilful intention to inflict the injury"). "Wanton" conduct, by contrast, does not involve an actual intent to harm or inflict injury but is nevertheless described as highly culpable conduct that is "equivalent in spirit to actual intent" to do harm or inflict injury. *Batten*, 264 Ga. at 726 (3) (citation and punctuation omitted). See *Carr*, 217 Ga. at 444 (1) (describing "wanton" conduct as "equivalent in spirit to actual intent"). The definition of "wanton" conduct further suggests that what primarily differentiates such

25

conduct from "reckless" conduct is the *degree of reckless indifference* exhibited. Specifically, "wanton" conduct involves a greater degree of reckless indifference than "reckless" conduct alone: conduct is "wanton" if it is "*so reckless or so charged with indifference* to the consequences as to be the equivalent in spirit to actual intent." *Batten,* 264 Ga. at 726 (3) (citation and punctuation omitted; emphasis supplied). See also *Carr*, 217 Ga. at 444 (1) (describing "wanton" conduct as that which "was *so reckless or so charged with indifference* to the consequences, where human life was involved, as to justify the jury to find a wantonness equivalent in spirit to actual intent" (emphasis supplied)); *Truelove*, 159 Ga. App. at 908 (4) (describing "wanton" conduct as that which "was *so reckless or so charged with indifference* to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent" (citation, punctuation and emphasis omitted; emphasis supplied)); *Arrington*, 83 Ga. App. at 112 (noting that there were Georgia cases holding that wantonness could not be established absent "proof that the misconduct is *reckless in the degree* that the jury would be

26

justified to find it equivalent in spirit to actual intent" (emphasis supplied)).[5]

To summarize, then, the language of OCGA § 51-1-11 (c), considered in context with the help of the associated-words canon, indicates that "reckless" conduct is less culpable than "willful" and "wanton" conduct, but like "willful" and "wanton" conduct, is both more culpable than "negligent" conduct and likely to cause harm.

(c)    The broader legal context in which OCGA § 51-1-11 (c)

---

[5] We acknowledge that including both "wanton" and "reckless" in OCGA § 51-1-11 (c), when "wantonness" is primarily understood as involving a greater degree of reckless indifference than "reckless" conduct alone, appears to be in tension with the surplusage canon, which counsels that we should interpret statutory language so as to avoid redundancy when possible. See *Camden County v. Sweatt*, 315 Ga. 498, 509 (2) (b) (883 SE2d 827) (2023) ("[C]ourts generally should avoid a construction that makes some language mere surplusage." (citation and punctuation omitted)). But the long history of defining "wantonness" in terms of "recklessness" indicates that some degree of redundancy in OCGA § 51-1-11 (c) is not only unavoidable but also acceptable. See *Williams*, 299 Ga. at 634 (noting that the legislature enacts statutes against the backdrop of, and with reference to, existing law). Further, any overlap in the meaning of "wanton" and "reckless" in OCGA § 51-1-11 (c), or in the effect of including both terms in the statute, is less concerning when the provision is considered in its broader statutory context. Specifically, the inclusion of "reckless" in OCGA § 51-1-11 (c), when only "willful" and "wanton[ ]" conduct are included in the punitive-damages statute, OCGA § 51-12-5.1 (b), suggests that a greater degree of culpability is required for a plaintiff to recover punitive damages than to overcome the statute of repose for product-liability claims.

27

was enacted supplies the remaining broad contours of a definition of "reckless" as used in the statute. Particularly relevant to our consideration of the broader legal context is the Restatement of Torts, which synthesizes legal principles commonly applied across United States jurisdictions. See Restatement (First) of Torts Intro. (1934) ("The object of the Institute in preparing the Restatement is to present an orderly statement of the general common law of the United States, including in that term not only the law developed solely by judicial decision, but also the law that has grown from the application by the courts of statutes that have been generally enacted and have been in force for many years.").

The Restatements are not Georgia law, but when OCGA § 51-1-11 (c) was enacted in 1987, relying on the First and Second Restatements of Torts for relevant context in interpreting and applying Georgia law was a well-established practice in this state. For example, we had relied on the Restatement (Second) of Torts when defining what it meant for a product to be defective under Georgia's product-liability statute, see *Center Chem. Co. v. Parzini*,

28

234 Ga. 868, 869-870 (3), (4) (218 SE2d 580) (1975), when determining whether certain negligent conduct amounted to "wilful or wanton" conduct authorizing an award under Georgia's punitive-damages statute, *Gen. Refractories Co. v. Rogers*, 240 Ga. 228, 230-231 & n.1 (239 SE2d 795) (1977), and when explaining the meaning of "intent" for purposes of intentional torts under Georgia law, *Reeves v. Bridges*, 248 Ga. 600, 603 (284 SE2d 416) (1981). See also, e.g., *Stewart v. Williams*, 243 Ga. 580, 582-583 (2) (255 SE2d 699) (1979) (relying on the Restatement (Second) of Torts when determining the burden of proving a statutorily defined affirmative defense asserted against a false-imprisonment claim); *Cox v. Cambridge Square Towne Houses*, 239 Ga. 127, 128-129 (236 SE2d 73) (1977) (adopting the Restatement (First) of Torts' approach to determining when the statute of limitation has run on certain nuisance claims); *Garren v. Southland Corp.*, 235 Ga. 784, 785-786 (221 SE2d 571) (1976) (relying on the Restatement (First) of Torts when determining whether "the word 'communicated' and the word 'publication'" in Georgia's libel statute were "broad enough to

29

include the reading aloud of a written defamation"); *Brand v. Montega Corp.*, 233 Ga. 32, 34 (2) (209 SE2d 581) (1974) (consulting the Restatement (Second) of Torts for guidance on when a surface-water invasion constitutes a trespass).

As explained below, the Restatement (First) of Torts provides a definition of "Reckless Disregard of Safety" that is largely consistent with how the term "reckless" had been used in Georgia civil cases leading up to OCGA § 51-1-11 (c)'s enactment.

The Restatement defines "Reckless Disregard for Safety" as follows:

> The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.

Restatement (First) of Torts § 500.[6]

---

[6] The Restatement (Second) of Torts provides a similar definition of "Reckless Disregard of Safety," the chief difference being that the First Restatement states that reckless conduct "involves a high degree of probability

30

Consistent with the Georgia case law discussed in Division 2 above, the Restatement explains that "reckless" conduct is more culpable than "negligent" conduct and involves a high risk of harm. Specifically, the Restatement states that recklessness differs from negligence in that recklessness "requires a conscious choice of a

that substantial harm will result," Restatement (First) of Torts § 500, whereas the Second Restatement states that reckless conduct involves a risk that "is substantially greater than that which is necessary to make [the actor's] conduct negligent," Restatement (Second) of Torts § 500 (1965). The Second Restatement explains that an amount of risk that "is substantially greater than that which is necessary to make [the actor's] conduct negligent" involves a risk "which is not merely in excess of [the conduct's] utility, but which is out of all proportion thereto." Restatement (Second) of Torts § 282 cmt. (e). But phrases such as "a high degree of probability" and "substantial harm," which are used in the First Restatement, better resemble legal tests that Georgia courts are accustomed to applying. See, e.g., *In the Matter of Skinner*, 295 Ga. 217, 219 (758 SE2d 788) (2014) (concluding that the improper disclosure of confidential information did not "work[ ] or threaten[ ] substantial harm to the interests of the client"); *Minor v. Barwick*, 264 Ga. App. 327, 335 (1) (590 SE2d 754) (2003) (concluding that the evidence presented on summary judgment could support a finding that the defendants were aware that the decedent "faced a substantial risk of serious harm"); *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 501 (469 SE2d 776) (1996) (holding that it was possible for the plaintiff to prove, within the framework of the complaint, "circumstances in which there was no certainty, but merely a high degree of probability[,] that the mental distress would follow, and the defendant went ahead in conscious disregard of it" (citation and punctuation omitted)). Because the language used in the First Restatement is more consistent with Georgia law, and because the Second Restatement indicates that "[n]o change in substance [was] intended" by "rewording" the First Restatement's definition, Restatement (Second) of Torts § 500 Reporter's Notes, we focus on the First Restatement's definition of "Reckless Disregard of Safety" rather than the Second Restatement's definition of that term.

course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man"; and that reckless conduct "must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore[ ] negligent." Restatement (First) of Torts § 500, cmts. (a), (g).

Further, consistent with the Georgia case law discussed in Division 3 (b) above, the Restatement clarifies that "reckless" conduct is distinct from, and less culpable than, conduct deemed intentional. Specifically, the Restatement explains that "[r]eckless misconduct differs from intentional wrongdoing" because a reckless actor "does not intend to cause the harm which results" and may "even . . . hope[ ] or . . . expect[ ] that his conduct will prove harmless." Id. § 500, cmt. (f). According to the Restatement, conduct can be "reckless" so long as the actor "realizes or, from facts which he knows, should realize that there is a strong probability that harm may result," and the Restatement further clarifies that "a strong probability is a different thing from the substantial certainty

32

without which [an actor] cannot be said to intend the harm in which his act results." Id.

Given that the Restatement's definition of "Reckless Disregard of Safety" describes "reckless" conduct as being more culpable than "negligent" conduct, as being less culpable than conduct deemed "intentional," and as involving a high risk of harm, the definition is consistent with how the word "reckless" was used in Georgia civil cases leading up to OCGA § 51-1-11 (c)'s enactment.

One aspect of the Restatement's definition, however, does not fit well with OCGA § 51-1-11 (c). Specifically, the Restatement focuses solely on reckless disregard for *safety*, whereas the statute concerns "conduct which manifests a . . . reckless . . . disregard for *life or property*." OCGA § 51-1-11 (c) (emphasis supplied). To give effect to the specific language of the statute, then, the legal principles underlying the Restatement's definition of "Reckless Disregard of Safety" must be tailored to fit with the statutory phrase "life or property." Accordingly, we hold that an actor's "conduct . . . manifests a . . . reckless . . . disregard for life or property," under

33

OCGA § 51-1-11 (c), if the actor intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable person to realize that the actor's conduct not only creates an unreasonable risk of harm to another's life or property but also involves a high degree of probability that substantial harm will result to the other's life or property.[7]

*Certified questions answered. All the Justices concur.*

---

[7] In *Walden*, 339 Ga. App. 733, the Georgia Court of Appeals indirectly relied on the Restatement (First) of Torts in providing the following definition of "reckless" conduct under OCGA § 51-1-11 (c):

> [A] reckless act [is] an act that is "intended by the actor, [although] the actor does not intend to cause the harm which results from it. It is enough that he realize or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct may prove harmless."

*Walden*, 339 Ga. App. at 737 (1) (a) (third alteration in original) (quoting *Arrington*, 83 Ga. App. at 112, which was quoting the Restatement (First) of Torts § 500 cmt. (f)). As described above, the legal principles included in this definition are relevant in determining whether conduct is "reckless." See Restatement (First) of Torts § 500 cmt. (f). However, *Walden*'s definition of "reckless" conduct was incomplete and failed to acknowledge several important features of the definition of "reckless" we have provided above. Among other things, *Walden*'s definition did not incorporate the reasonable person standard and failed to acknowledge that recklessness involves the creation of an unreasonable and substantial risk of harm. Accordingly, *Walden* is disapproved to the extent that it conflicts with the definition we have provided above.

Decided September 19, 2023.

Certified questions from the United States District Court for the Northern District of Georgia.

*Watson Spence, Michael R. Boorman, Philip A. Henderson; Poole Huffman, Timothy M. Andrews; Huie Fernambucq & Stewart, Paul F. Malek, D. Alan Thomas; Thompson Coe Cousins & Irons, Michael W. Eady*, for appellant.

*Cook Law Group, Matthew E. Cook, Kate S. Cook, Nathan R. Nicholson, Robert H. Childres III; The Parrish Law Firm, Jonathan A. Parrish; Turner & Associates, C. Tab Turner, Damon C. Singleton; Hogue Law Firm, David Hogue*, for appellee.

*Stewart Miller Simmons, Madeleine N. Simmons; Beasley Allen Crow Methvin Portis & Miles, Alyssa B. Baskam; Cannella Snyder, Tedra L. Cannella, Robert H. Snyder, Jr.*, amici curiae.